Roger JOHNSON, Marcus Russell,
Donald Lenyard, and Tronie
Johnson, Plaintiffs,

v.

**MILWAUKEE SCHOOL OF
ENGINEERING,**
Defendant.

No. 02–C–0098.

United States District Court,
E.D. Wisconsin.

April 23, 2003.

Colleen L. Bero–Lehmann, Kmiec Law Offices, Milwaukee, WI, for Plaintiffs.

Elizabeth M. Drew, Thomas W. Scrivner, Michael Best & Friedrich, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiffs Roger Johnson, Marcus Russell, Donald Lenyard and Tronie Johnson bring this employment discrimination action alleging that defendant Milwaukee School of Engineering discriminated against them based on their race (African–American) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq.[1] Plaintiffs allege that they were unlawfully discriminated against in a number of ways, including by being denied promotions, training and overtime, and by being assigned work in a discriminatory way. Plaintiffs also allege that they were unlawfully retaliated against for filing discrimination charges with the federal Equal Opportunity Employment Commission ("EEOC") or the state Equal Rights Division ("ERD"). Defendant now moves for partial summary judgment arguing that some of plaintiffs' claims are barred by the statute of limitations, some are outside the scope of plaintiffs' administrative charges, and some fail to allege an adverse employment action.

### I. FACTS

Plaintiffs were employed in defendant's housekeeping department: Lenyard from May 2, 1990 until September 15, 2002; Russell from April 3, 1991 until December 1999 when he went on disability leave; Roger Johnson from November 19, 1990 to the present; and Tronie Johnson from November 10, 1992 to the present. On October 13, 1999, Roger Johnson filed a discrimination charge with the ERD. On February 11, 2000, Lenyard and Russell filed charges with the EEOC, and on March 31, 2000, Tronie Johnson did likewise. Additional facts will be stated in the course of the decision.

### II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Material" facts are those facts that might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over such facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. *Id.* The movant bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317,

---

1. Plaintiff Lenyard also raises a claim under the Americans With Disabilities Act, alleging failure to reasonably accommodate his disability. This claim is not at issue in the motion before me.

323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its burden, the nonmoving party then must present specific facts showing that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Statute of Limitations

 Defendant moves to dismiss a number of plaintiffs' claims on the ground that they are time-barred. In order to bring an action in federal court under Title VII, a Wisconsin plaintiff must file a charge of discrimination with the EEOC or ERD within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e).[2] However, this statute of limitations is subject to a number of judicially created tolling mechanisms. For example, courts have created the "continuing violations" doctrine, which allows the limitation period to be tolled for alleged discriminatory conduct that is deemed continuing in nature so long as at least some of that conduct occurred during the 300 day period. This doctrine, which is partly the product of Title VII's comparatively short filing deadline, has been invoked in a variety of situations and has been the subject of judicial and academic consternation. *See The Supreme Court, 2001 Term–Leading Cases*, 116 Harv. L.Rev. 352, 356 (2002).

In *National Railroad Passenger Corp. [Amtrak] v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court addressed the continuing violations doctrine and attempted to clarify some of the confusion surrounding it. *Amtrak* involved a "serial violation" in which the employer engaged in similar but discrete acts of discrimination both before and during the limitations period. *The Supreme Court, 2001 Term–Leading Cases, supra*, at 357; *see, e.g., DeNovellis v. Shalala*, 124 F.3d 298, 307 (1st Cir.1997) ("A serial violation is composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong ... under Title VII[.]") (citation omitted). The Court held that the continuing violations doctrine could not be utilized in serial violation cases, stating that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Amtrak*, 536 U.S. at 113, 122 S.Ct. 2061.

However, the Court distinguished cases involving claims of a hostile work environment from cases involving serial violations. It held that in the former the entire time period in which a hostile environment existed could ·be considered in determining liability, as long as the charge was filed within 180 or 300 days of an act that contributed to the hostile environment. *Id.* at 117–18, 122 S.Ct. 2061. The Court reasoned that hostile environment claims are, by their nature, based on the cumulative effect of individual acts that may occur over a period of time and that, therefore, the entire hostile environment constitutes a single, unlawful employment practice.

---

**2.** For purposes of the statute of limitations, Wisconsin is a "deferral state," i.e. one with its own anti-discrimination laws and state agency empowered to investigate alleged violations of those laws and grant relief. In such states, the plaintiff has 300 days within which to file with the agency. In non-deferral states, the limitations period is 180 days. 42 U.S.C. § 2000e–5(e); *see generally Smith v. Gen. Scanning, Inc.*, 832 F.2d 96, 98 (7th Cir.1987).

Although the dichotomy between hostile environment claims and claims alleging a series of discrete acts is far less clear cut than the Court indicated and, in fact, the two are often intertwined, the Court nevertheless stated that an employer could be liable for discrete acts that occurred prior to the filing period only if they contributed to a hostile environment. *Id.* at 120–21, 122 S.Ct. 2061.

In *Amtrak*, the Court noted but did not address a third situation in which the continuing violations doctrine may be relevant, i.e., in " 'pattern-or-practice' claims brought by private litigants." *Id.* at 115 n. 9, 122 S.Ct. 2061. The Court's mention of pattern or practice claims appears to have been a reference to claims involving a "systemic violation," that is, "a continuing policy and practice of discrimination on a company-wide basis" that continues into the limitations period. *See Green v. L.A. County Superintendent of Sch.*, 883 F.2d 1472, 1480 (9th Cir.1989); *see also Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 183 (1st Cir.1989) (noting that in cases of systemic violations it is "unnecessary [for a plaintiff] to identify any single act of discrimination within the limitations period"). An example of a systemic violation would be a company policy against the promotion of women; the continuing violations doctrine would allow a female employee of the company to sue even if she herself had not been denied a promotion during the limitations period. *The Supreme Court, 2001 Term–Leading Cases, supra*, at 357 (citing *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.1982)). In systemic violation cases, plaintiffs usually present "pattern or practice" style proof, which consists of massive statistical presentations accompanied by expert testimony. 4 Lex K. Larson, *Employment Discrimination* § 72.08[4][c] (2nd. ed.2003).

In response to defendant's argument that some of their claims are time-barred, plaintiffs first argue that claims based on acts occurring more than 300 days before charges were filed are nevertheless timely because the acts alleged were part of a systemic violation. Plaintiffs argue that "defendant had a systematic policy and practice of denying Black employees overtime" (Pls.' Br. at 4), and subsequent to August 16, 1997, a policy of not posting opportunities for promotion, which policy also had a discriminatory effect.

■ However, plaintiffs' only proof concerning the alleged policy regarding overtime is Russell's statement that two white workers got all the overtime. And their only proof regarding the alleged discriminatory policy concerning promotions is that promotional opportunities in the housekeeping department were not posted. This evidence falls far short of demonstrating a systemic violation. Moreover, it is not pattern or practice style proof. Plaintiffs do not allege or present evidence of institution-wide discrimination or of the existence of an express discriminatory policy. Nor do they offer pattern and practice-type evidence, such as statistical proof, to bolster their individual claims. At most, plaintiffs' show that defendant committed a number of discrete, albeit allegedly related, discriminatory acts. And *Amtrak* makes clear that discrete acts of discrimination cannot constitute a continuing violation even though they are related. Thus, plaintiffs' attempt to invoke the continuing violations doctrine based on their claim of a systemic violation fails.

■ Plaintiffs also contend that the acts in question are not time-barred because they contributed to a hostile work environment. However, a plaintiff seeking to establish a hostile work environment claim must demonstrate the existence of conduct that is sufficiently severe or pervasive that a reasonable person would find it hostile or abusive. *See Harris v. Fork-*

*lift Sys. Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Title VII is not a general civility code designed to purge the workplace of all boorish or even all harassing conduct. *Spearman v. Ford Motor Co.,* 231 F.3d 1080, 1086 (7th Cir. 2000). Relatively isolated instances of nonsevere misconduct will not support a claim of hostile environment. *Ngeunjuntr v. Metro. Life Ins. Co.,* 146 F.3d 464, 467 (7th Cir.1998). Similarly, as to offensive comments, more than isolated and innocuous incidents are required. *Id.* In evaluating whether an environment is hostile, I must look at all the circumstances including: "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367.

■■■ In support of their claim that defendant created a hostile environment, plaintiffs assert that a white assistant supervisor said on several occasions that black employees were supposed to work with their own kind and referred to them as "boys," and that black employees were told not to congregate with each other and were assigned more demanding tasks than other employees. These allegations do not rise to the level necessary to establish a hostile work environment claim. Plaintiffs do not demonstrate that the work environment was objectively hostile or abusive. They do not claim that the environment unreasonably interfered with their work performance or that it was physically threatening. Although plaintiffs point to some instances of allegedly humiliating conduct, such conduct was not sufficiently severe or pervasive to enable a reasonable juror to find that a hostile work environment existed. Because plaintiffs do not establish a hostile work environment, their

argument that acts which occurred before the 300 day filing period may be considered in assessing liability fails.

Thus, plaintiffs do not establish either a pattern or practice or a hostile environment claim. Therefore, the following claims are barred by the statute of limitations: (1) all four plaintiffs' claims that they were denied a promotion to lead housekeeper in August 1997; (2) all four plaintiffs' claims that they were denied a promotion to assistant building manager in August 1997; (3) all four plaintiffs' claims that they were denied a promotion to locksmith in March 1998; (4) plaintiffs Lenyard's, Russell's and Roger Johnson's claims that they were denied a promotion to lead housekeeper in April 1998; (5) all four plaintiffs' claims that they were denied training relating to the above-identified promotions; and (6) all four plaintiffs' claims that they were denied overtime more than 300 days before their administrative charges were filed.

**B. Whether Plaintiffs Unlawfully Expanded Administrative Charges**

■■■ Defendant argues that a number of plaintiffs' claims are barred because plaintiffs did not raise them in their administrative charges. As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in the EEOC charge. *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). Nevertheless, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in his complaint. *Id.* Rather, all Title VII claims set forth in a complaint are cognizable if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the

charge. *Id.* (citing *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.1976) (en banc)); *Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7th Cir. 1996).

 Claims are not alike or reasonably related unless there is a factual relationship between them. *W. & S. Life Ins.,* 31 F.3d at 501. "This means that the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals.*" *Id.* (citing *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992)). A claim of race discrimination in an EEOC charge and a claim of race discrimination in a complaint are not alike or reasonably related only because they both assert forms of race discrimination. *Id.*

 Defendant argues that a number of plaintiffs' claims must be dismissed because they were not identified in plaintiffs' administrative charges and because they are not like or reasonably related to charges that were stated. Defendant first argues that plaintiffs Russell's, Lenyard's and Roger Johnson's claims regarding denial of promotions are, with the exception of the claim regarding the promotion of Lee Oakley to assistant supervisor, outside the scope of the administrative charges. Both plaintiffs Lenyard and Russell alleged in their EEOC charges, filed February 11, 2000, that they were denied promotions based on race. Thus, their claims regarding denials of promotions that occurred within 300 days of February 11, 2000, may go forward. In his ERD charge dated October 13, 1999, Roger Johnson alleged that he was denied promotions. Thus, his claim regarding the denial of promotions that occurred within 300 days of October 13, 1999, may go forward.

 Second, defendant argues that plaintiff Tronie Johnson's claim regarding the denial of promotions is outside the scope of his EEOC charge. Tronie John-

son's EEOC charge makes no reference to discrimination in the form of denial of promotions. Nor is this claim like or reasonably related to the claims stated in his EEOC charge. Thus, he cannot proceed on his denial of promotions claim.

 Third, defendant argues that plaintiff Russell's claim that he was denied training is outside the scope of his EEOC charge. I agree, Russell's EEOC charge makes no reference to this form of discrimination. Nor is this claim like or reasonably related to the claims in his EEOC charge. Thus, plaintiff cannot proceed on this claim.

Fourth, defendant argues that plaintiff Russell's claim that he was discriminated against in work assignments is outside the scope of his EEOC charge. Again, I agree with defendant. Russell makes no reference to this form of discrimination in his EEOC charge, and the claim is not like or reasonably related to the claims in the charge. Thus, plaintiff Russell is barred from proceeding on the charge.

Fifth, defendant argues that plaintiff Russell's hostile work environment claim is outside the scope of his EEOC charge. I need not consider this argument because I have already ruled that plaintiffs fail to state a hostile environment claim.

 Sixth, defendant argues that plaintiff Lenyard's claim that he was unlawfully denied training opportunities is outside the scope of his EEOC charge. Plaintiff Lenyard makes no reference to the denial of training opportunities in his EEOC charge. Nor is this claim like or reasonably related to the claims in the charge. Thus plaintiff may not proceed on this claim.

 Seventh, defendant argues that plaintiff Roger Johnson's claim that defendant discriminated against him by failing to post promotional opportunities is out-

side the scope of his ERD claim. However, in his administrative charge, Roger Johnson makes several references to being illegally denied and not considered for promotions. The claim that defendant discriminated against him by failing to post opportunities for promotions is like or reasonably related to this claim, thus plaintiff may go forward on it.

■ Eighth, defendant argues that plaintiff Roger Johnson's claim that he was unlawfully denied overtime opportunities is outside the scope of his ERD charge. Plaintiff Roger Johnson makes no reference to discrimination in the form of denial of overtime in his administrative charge. Moreover, such claim is not like or reasonably related to the claims in the charge. Therefore, plaintiff may not proceed on this claim.

Ninth, defendant contends that plaintiff Roger Johnson's hostile environment claim is outside the scope of his ERD charge. I need not consider this argument because I have already found that plaintiffs do not state a hostile work environment claim.

■ Tenth, defendant argues that plaintiff Tronie Johnson's claim that defendant discriminated against him by failing to post promotional opportunities is outside the scope of his EEOC charge. I agree. Plaintiff Tronie Johnson makes no reference in his EEOC charge to this form of discrimination or to discrimination that is like or reasonably related to this form of discrimination. Thus, he may not proceed on this claim.

■ Defendant's last three arguments are that plaintiff Tronie Johnson's claims that he was denied overtime, that he received discriminatory work assignments and that he was denied training opportunities are outside the scope of his EEOC charge. Tronie Johnson's EEOC charge makes no reference to the deprivation of overtime opportunities, to discriminatory

work assignments or to the denial of training opportunities. Moreover, these claims are not like or reasonably related to any of the claims in his EEOC charge. Thus, he is barred from going forward on these claims.

## C. Sufficiency of Plaintiffs' Retaliation and Discrimination Based on Work Assignment Claims

Defendant argues that the retaliation claims alleged by Lenyard, and Roger and Tronie Johnson must be dismissed because plaintiffs do not allege that they suffered an adverse employment action as a result of defendant's alleged retaliatory conduct. Defendant also argues that plaintiffs' claims of discriminatory work assignments must be dismissed because they fail to allege an adverse employment action. I address these arguments in turn.

### 1. Retaliation

■ In order to prevail on a Title VII retaliation claim, a plaintiff must show that he engaged in protected activity under Title VII and that as a result the employer retaliated against him. *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 745–746 (7th Cir.2002). Defendant argues that plaintiffs' retaliation claims fail because plaintiffs do not allege that defendant caused them to suffer an adverse employment action.

■ There is a difference between what a Title VII plaintiff must prove in order to establish discrimination and what he must prove to establish retaliation. A Title VII discrimination plaintiff must establish an adverse employment action. However, the same is not true in a retaliation case. *Id.* at 745.

"The language of 'materially adverse employment action' that some courts employ in retaliation cases is a paraphrase of Title VII's basic prohibition

against employment discrimination, found in 42 U.S.C. §§ 2000e–2(a)(1) and (2).... The provision regarding retaliation may intentionally be broader, since it is obvious that effective retaliation against employment discrimination need not take the form of a job action."

*Id.* at 745–46 (quoting *McDonnell v. Cisneros,* 84 F.3d 256, 258–59 (7th Cir.1996)); *see also Knox v. Indiana,* 93 F.3d 1327, 1334 (7th Cir.1996) ("There is nothing in the law of retaliation that restricts the type of retaliatory act that might be visited on an employee who seeks to invoke her rights by filing a complaint.")

Further, it appears that if retaliation does take the form of an employment action, such action need not be as severe as that required to state a discrimination claim. *Herrnreiter,* 315 F.3d at 746. In *Herrnreiter,* the Seventh Circuit criticized a number of decisions that stated or assumed that in a retaliation context, an employment action must be as severe as in a discrimination context. The court did not resolve the question of what conduct is necessary to be actionable in a retaliation context, but cited or discussed a number of cases which are instructive on the issue. *See, e.g., Passer v. Am. Chem. Soc'y,* 935 F.2d 322, 331 (D.C.Cir.1991) (holding that cancellation of a symposium in employee's honor was a sufficient act of retaliation); *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th Cir.1996) (holding that filing of charges by employer constituted retaliatory act). Particularly instructive is another case cited in *Herrnreiter*—*Ray v. Henderson,* 217 F.3d 1234 (9th Cir.2000), because there the court discussed and adopted what I conclude is the appropriate standard for determining whether conduct is actionable in the context of a retaliation claim.

In *Ray,* the court pointed out that the EEOC has interpreted "adverse employment action" in the retaliation context to mean " 'any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.' " *Id.* at 1242 (quoting EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008 (1998)). The court further stated that although the EEOC Guidelines were not binding on courts, they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id.* (internal citations and quotation marks omitted). The court adopted the test recommended by the EEOC, and, citing *Knox,* noted that the test was consistent with the view of the Seventh Circuit. *Id.* at 1243. The court made clear that the EEOC test covered such employment actions as lateral transfers, unfavorable job references, and changes in work schedules because such actions were all "reasonably likely to deter employees from engaging in protected activity." *Id.*

The *Ray* court went on to explain that "the severity of an action's ultimate impact (such as loss of pay or status) goes to the issue of damages, not liability," and that by focusing on the deterrent rather than the ultimate effects of each employment action, the EEOC test effectuated the letter and the purpose of Title VII. *Id.* (internal citations and quotation marks omitted). This was so because 42 U.S.C. § 2000e–3(a) prohibits "discriminat[ion]" against an employee for engaging in protected activity but does not limit what type of discrimination is covered, nor prescribe a minimum level of severity for actionable discrimination. *Id.* The court noted its agreement with the D.C. Circuit, which in *Passer* stated that:

The statute itself proscribes discrimination against those who invoke the Act's protections; the statute does not limit its reach only to acts of retaliation that take the form of cognizable employment

actions such as discharge, transfer or demotion.... To establish a prima facie case under section 704(a) [42 U.S.C. § 2000e–3(a) ], a plaintiff must show: 1) that he or she engaged in activity protected by the statute; 2) that *the employer ... engaged in conduct having an adverse impact on the plaintiff;* and 3) that the adverse action was causally related to the plaintiff's exercise of protected rights.

935 F.2d at 331 (internal quotation marks omitted).

■ I find that the reasoning of *Ray* is both persuasive and consistent with the Seventh Circuit's discussions in *Herrnreiter* and *Knox.* Therefore, to determine whether plaintiffs sufficiently allege actionable retaliation, I ask whether the action or actions complained of were likely to deter the charging party or others from engaging in activity protected by Title VII.

■ Plaintiffs argue that they were retaliated against for engaging in a protected activity, i.e., filing EEOC or ERD complaints. Defendant argues that plaintiffs' claims fail because the employment actions it is alleged to have taken against plaintiffs were insufficiently adverse. Plaintiff Lenyard alleges that defendant's retaliatory conduct included giving him worse evaluations than in the past, and unjustifiably harassing him about the quality of his work and about how much time he took to perform it. He states that a supervisor mopped his feet, that he had a cross and dagger drawn in his broom closet, that his work was monitored more closely than other employees, that he was prevented from congregating with other plaintiffs and that defendant refused to provide him with the assistance necessary to clean his assigned area. These actions were reasonably likely to deter an employee from complaining about discrimination in the workplace. Thus, defendant's motion to dismiss plain-

tiff Lenyard's retaliation claim must, at this stage of the proceedings, be denied.

■ Plaintiff Roger Johnson alleges that defendant retaliated against him by giving him worse performance evaluations than he had received in the past and more write-ups for negative performance. He also asserts that he was prevented from congregating with other plaintiffs. These actions were also reasonably likely to deter an employee from filing a discrimination claim. Thus, defendant's motion for summary judgment with respect to plaintiff Roger Johnson's retaliation claim must also be denied.

■ Plaintiff Tronie Johnson argues that prior to filing his EEOC charge he was permitted to work from 12:00 a.m. to 8:00 a.m. to enable him to work a second full-time job. He contends that defendant retaliated against him by changing his hours so that he could no longer work full-time at another job. He also argues that a statement by defendant's human resources director provides direct evidence of retaliation. In the statement, the director expressed anger concerning the EEOC charges and said, " 'you guys wanting to start at 11:00 at night instead of 9:00? It ain't gonna happen." ' (Pls.' Br. at 29.) Defendants acknowledge changing Johnson's hours but argue that he was still given the option to work full-time, thus there was no adverse employment action. However, defendant's action was reasonably likely to deter an employee from engaging in protected conduct. Therefore, defendant's motion for partial summary judgment with respect to this claim must be denied.

### 2. Discriminatory Work Assignments

■ Defendant argues that plaintiffs' claims that defendant assigned work to African–Americans in a discriminatory manner must be dismissed because such conduct cannot rise to the level of an ad-

verse employment action. Defendant does not present evidence concerning plaintiffs' particular work assignments; instead, defendant argues that discrimination in work assignments is never actionable. I need not address this issue insofar as it relates to plaintiffs Russell and Tronie Johnson because of my finding that they did not raise this claim in their EEOC charges. Thus, I address defendant's argument only insofar as it relates to plaintiffs Lenyard and Roger Johnson.[3]

 As previously indicated, in order to prove discrimination in a Title VII case, a plaintiff must show that he suffered an adverse employment action. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 899–900 (7th Cir.2003). "The definition of an adverse employment action is generous, but it is still subject to certain limitations. At the very least [a plaintiff] must show some quantitative or qualitative change in the terms or conditions of employment that is more than a mere subjective preference." *Id.* at 901 (internal citations omitted). Generally speaking, cases finding adverse employment actions fall into three categories: (1) cases in which an employee is discriminated against in connection with compensation or other financial terms of employment; (2) cases in which an employee is discriminated against by a nominally neutral act which actually significantly reduces an employee's career prospects; and (3) cases in which an employee is discriminatorily subjected to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative workplace environment, one that can fairly be characterized as an objective hardship. *Herrnreiter*, 315 F.3d at 744.

Plaintiffs Lenyard and Roger Johnson argue that their discriminatory work as-signment claims fall within the final category. Thus, in order to prevail on its motion, defendant must establish that no reasonable jury could find that a discriminatory work assignment poses an objective hardship. Defendant has not met its burden. Defendant has not shown that no reasonable jury could find that the discriminatory assignments of which plaintiffs complain pose an objective hardship.

## IV. CONCLUSION

As stated above and for the reasons indicated,

**IT IS ORDERED** that defendant's motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the court shall hold a telephonic status conference on May 12, 2003 at 1:30 p.m. The court will initiate the call.

---

**3.** Plaintiffs Lenyard and Roger Johnson do not appear to have raised the discriminatory work assignment claim in their administrative charges either. However, the EEOC filing requirement is not jurisdictional and is subject to waiver. *Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).