**Chinnawut NGEUNJUNTR, Plaintiff–Appellant,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 97–3000.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1998.

Decided June 1, 1998.

Herbert H. Victor (argued), Chicago, IL, for Plaintiff–Appellant.

Martin Harris, James J. Oh (argued), Karen J. Moss, Connelly, Sheehan & Moran, Chicago, IL, Joseph J. Hasman, Daniel A. Engel, Peterson & Ross, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE, and EVANS, Circuit Judges.

EVANS, Circuit Judge.

Chinnawut Ngeunjuntr contends that he encountered a hostile work environment during the time he was employed as a sales representative at the Metropolitan Life Insurance Company. He filed an action alleging that the conduct was based on his national origin and religion and thus violated Title VII, 42 U.S.C. § 2000e *et seq.* Ngeunjuntr is Thai and a Buddhist. MetLife moved for summary judgment, which the district court granted on July 8, 1997.

Ngeunjuntr began working for MetLife in 1988 and, during his years with the company, worked at several branch offices in the Chicago area. It seems that he had problems with management no matter where he worked. At what is called the "Far East Office," referring to an area of Chicago, not Asia, Ngeunjuntr had trouble with Branch Manager Albert Chang. Ngeunjuntr failed to regularly attend required weekly mandatory branch office meetings; he once telephoned Chang at 1 a.m. to ask a routine question; his office was considered to be a pigsty; and Chang felt that Ngeunjuntr repeatedly "backstabbed" him. Chang asked to have Ngeunjuntr transferred. The last

day Ngeunjuntr worked for Chang he became so abusive that Chang called building security to escort Ngeunjuntr from the office.

Ngeunjuntr then went to MetLife's Oak Lawn district office where he worked for District Manager Louis Hulsey. Again there were complaints about missed meetings and a messy office. In addition, Hulsey suspected that Ngeunjuntr was living in his office. Another sales representative saw him in the building late at night in his undershorts and slippers.

When the Oak Lawn district office was closed, Ngeunjuntr was assigned to the White Eagle branch office, which Hulsey managed. However, because Ngeunjuntr's son lived in Oak Lawn, Ngeunjuntr was allowed to work out of the Oak Lawn branch office, which is a different location from the closed Oak Lawn district office. Ngeunjuntr continued to report to Hulsey even though the two men were in different offices. During this time, the manager of the Oak Lawn branch office, George Pavlotos, and the Navajo Hills branch manager, Don Pasqua, both complained about Ngeunjuntr. Pavlotos complained about Ngeunjuntr's sloppy office and his walking through the office conference rooms during meetings, despite being asked not to do so.

Next, Ngeunjuntr's office was moved to the Midway branch office, which was managed by Anthony Rogers, though for a time after the transfer Ngeunjuntr continued to report to Hulsey rather than Rogers. On February 28, 1992, Hulsey prepared a document he called a "Memorandum of Understanding," which Ngeunjuntr signed, regarding his obligations while working at the Midway branch. In it he agreed to attend branch meetings and keep his office clean. But in May 1992 Mulvey and Rogers suspected that Ngeunjuntr was living in his office at the Midway branch. A sales representative had spoken with Ngeunjuntr's son, who stated that he had slept in the office with his father the night before; a sales representative encountered Ngeunjuntr in the office dressed in his undershirt, shorts, and slippers at 11:30 p.m.; and another sales representative encountered Ngeun-

juntr's son in the office on a Sunday morning. During 1992 Ngeunjuntr was assigned to report to Rogers, rather than Hulsey. Also during this time Ngeunjuntr's sales deteriorated. Ngeunjuntr acknowledges that Rogers tried to help him increase his sales. But his sales continued to deteriorate and the condition of his office was still a problem.

In 1994 MetLife instituted a policy under which sales representatives, such as Ngeunjuntr, who did not generate a minimum level of business were moved out of private offices into Dilbert-like cubicles. Ngeunjuntr was moved, and his cubicle, which didn't win any Good Housekeeping Seals of Approval, was slovenly. That and other problems involving disputes among personnel prompted Rogers to ask that Ngeunjuntr be transferred. The regional vice-president refused to approve the transfer because Ngeunjuntr had already been transferred three times and had trouble with whichever manager he reported to. From May through September of 1994 Ngeunjuntr made no insurance sales whatsoever. He then went on disability leave, where he apparently remains today. He has not been terminated or suspended from MetLife.

In October 1994 Ngeunjuntr filed a charge with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights, alleging that MetLife harassed him, removed him from his office, and denied him a transfer to another office because of his national origin and religion. As we have said, he is Thai and a Buddhist. As evidence of harassment, Ngeunjuntr complained specifically of the following incidents. Chang summoned police to have him removed from the Far East branch office and had him transferred to another branch; Chang harassed him about production, gave him "the finger" on one occasion, and "got mad at him for things he did not get mad at other agents for." Also, Ngeunjuntr claims that Pasqua threw his belongings into the trash and that an office administrator at the Midway branch told two telephone callers that Ngeunjuntr did not work there. His most serious claims—and the claims that most clearly involve his national origin or his religion—are that Rogers allegedly told two

other MetLife representatives that he did not trust Ngeunjuntr or "the yellow race" and that they should not trust him because he was a Buddhist. Ngeunjuntr says that Rogers also told him to "go back East." Finally, Ngeunjuntr claims that Mulvey told another sales representative, not Ngeunjuntr, that "you Middle Eastern people are a pain in the butt."

■ Ngeunjuntr contends that summary judgment should not have been granted because when the evidence is viewed in the light most favorable to him, the nonmoving party, disputed issues of material fact are present. We review the grant of summary judgment de novo and the record in the light most favorable to Ngeunjuntr, the nonmoving party. *Piraino v. International Orientation Resources, Inc.*, 84 F.3d 270 (7th Cir. 1996).

■ Harassment, in the context of Title VII, involves conduct that unreasonably interferes with a person's work performance or creates an intimidating, hostile, or offensive work environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Title VII protects a worker against conduct which is sufficiently severe or pervasive that a reasonable person would find it hostile and which the victim himself subjectively sees as abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The standard set out in *Harris* was intended to take a middle path between making actionable any merely offensive conduct and requiring tangible psychological injury before the conduct is actionable. With that in mind, we have said that relatively isolated instances of nonsevere misconduct will not support a claim of a hostile environment. *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526 (7th Cir.1993). Similarly, as to offensive comments, we have said that "isolated and innocuous incidents will not support a hostile environment claim." *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 885 (7th Cir.1998), quoting *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 480 (7th Cir.1996). In evaluating whether a workplace is hostile we must look at all the circumstances, including

the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Harris*, 510 U.S. at 23, 114 S.Ct. 367.

■ The circumstances of which Ngeunjuntr complains simply fail to meet the standards. Some of the incidents he describes do not give rise to an implication that the conduct was a result of discrimination. Given the pervasive problems which MetLife managers had with Ngeunjuntr, it is not possible to conclude that Chang's getting mad at Ngeunjuntr, for instance, had something to do with discriminatory motives. *See Oncale v. Sundowner Offshore Servs., Inc.*, —— U.S. ——, ——, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998).

The alleged comments were offensive but they were also isolated and, in some circumstances, not directed at Ngeunjuntr. Rogers' comments about the yellow race and Buddhists are unenlightened, but isolated. Furthermore, those particular comments were not made to Ngeunjuntr but to other MetLife representatives outside Ngeunjuntr's presence. In those circumstances we have declined to find discrimination. *Johnson v. City of Fort Wayne*, 91 F.3d 922 n. 8 (7th Cir.1996). Similarly, Mulvey's comment about Middle Easterners was made outside Ngeunjuntr's presence and, more importantly, hardly seems relevant to Ngeunjuntr. That said, however, we do not discount the discomfort that slurs on ethnic groups other than one's own can cause for a worker. We are left with Rogers' comment, directed at Ngeunjuntr, to "go back East." The comment is inappropriate, but isolated. In fact, the problem with Ngeunjuntr's case is that even if we were to interpret each of the comments and actions alleged as evidence of hostility or discrimination, given the totality of the circumstances we would have to conclude that the evidence presented does not reveal an environment sufficiently hostile that a reasonable person would find it abusive, even if Ngeunjuntr himself did. The facts do not give rise to a Title VII claim. For that

reason, we agree with the district court and AFFIRM its decision.

AFFIRMED.