Dorothy TURNER, Plaintiff–Appellant,

v.

HONEYWELL, MICRO SWITCH DIVISION, Defendant–Appellee.

No. 01–1347.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 12, 2002.*

Decided Dec. 20, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before BAUER, POSNER, and DIANE P. WOOD, Circuit Judges.

## ORDER

Dorothy Turner, an African American, sued her employer Micro Switch, alleging failure to promote, racial harassment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e. Micro Switch filed a motion for summary judgment which the district court granted. Turner appeals, and we affirm.

Turner began working for Micro Switch in 1971 as an assembly worker. In 1984 Micro Switch promoted Turner to a Group Leader position in Department 280, where assembly workers place resistors and conductors on ceramic capacitors through thick-film printing. Turner worked as a Group Leader until 1995 when Micro Switch eliminated all Group Leader positions. At the time that it eliminated the Group Leader position, Micro Switch created a new position called Technical Associate. This new position encompassed many of the Group Leader's responsibilities but required a higher level of technical expertise. Employees who had been Group Leaders were given the first opportunity to apply for the new Technical Associate positions.

Turner applied for a Technical Associate position as did Fred Balles, a white male who had also worked as a Group Leader. Turner and Balles were the only candidates for the position. Micro Switch chose Balles over Turner for the slot, and Turner became an FN4 Team Member, a position below Technical Associate. Several months later, the Technical Associate position reopened. Turner again applied, but Micro Switch instead selected Cathy Wilson, a white female. According to Micro Switch, first Balles and later Wilson were promoted because they had higher technical skills than Turner.

Turner had been working on the second shift and wanted to transfer to the first shift. In March 1997 Micro Switch placed her in a first-shift FN3 Team Member position, a step below her former FN4 position. In July 1997 Turner applied for

an FN4 Team Member position on the first shift but was passed over in favor of John Ginger, a white male. According to Micro Switch, Turner and Ginger were equally qualified for the position, and Ginger was selected because he had more seniority. In August 1997 Turner filed a complaint with the United States Department of Labor, Office of Federal Contract Compliance Programs ("OFCCP"), alleging that Micro Switch had declined to promote her several times because of her race. After filing the complaint, Turner continued to work as an FN3 Team Member until November 1997. On November 14, Turner was promoted to a first shift FN4 Team Member position with back pay from March 1997.

According to Turner, she became the target of racial harassment after transferring to the first shift. First, Turner claimed that Charmaine Munz, the first shift supervisor, repeatedly mentioned at staff meetings that the department was overstaffed and that layoffs could follow. Turner understood Munz to be suggesting that Turner's transfer to the first shift created the overstaffing problem and would be the cause of any layoffs. Subsequently, some of Turner's co-workers accused her of falsifying her time card, violating company procedures, and failing to perform her job competently; Turner attributes their antagonism to resentment sparked by Munz's comments. Further, Turner says that some of her co-workers informed her that the word "nigger" was frequently used in Department 280, though she concedes that she never heard the slur herself.

After filing a complaint with the Equal Employment Opportunity Commission, Turner filed this suit against Micro Switch in August 1998, alleging failure to promote because of race, racial harassment, and retaliation. The district court granted summary judgment in favor of Micro Switch. First the court found that any claims based on the decisions made in 1995 and 1996 not to promote Turner to Technical Associate were time-barred. Regarding the 1997 decision to promote Ginger over Turner, the court found that Micro Switch had articulated a legitimate, non-discriminatory reason for its selection—Ginger's seniority—and Turner had failed to produce evidence from which a factfinder could infer pretext. As for Turner's harassment claim, the court found that, because Turner herself had never heard her co-workers use the racial slur, she could not establish an objectively hostile work environment. Moreover, the court concluded, Turner had not established a causal link between Munz's comments at staff meetings and the unfriendly treatment that she perceived from co-workers. And even if Munz's comments *did* stir up hostility against Turner, the court added, the basis for this hostility was not racial animus, but resentment related to Turner's transfer. Finally, regarding Turner's retaliation claim, the court found that she had not established a causal link between her filings with the OFCCP in August 1997 and the EEOC in March 1998 and any of Micro Switch's decisions to pass her over for promotion.

■ On appeal Turner does not contest the district court's conclusion that any claims based on Micro Switch's failure to promote her to Technical Associate in 1995 and 1996 are time-barred. What Turner does argue is that the court erred in finding that she had not produced evidence that Micro Switch's stated rationale for hiring Ginger—seniority—was pretextual; Turner maintains, specifically, that Micro Switch did not use seniority in its decisions to pass her over in favor of Fred Balles and Cathy Wilson when it filled the Technical Associate positions. But Micro Switch did not consider seniority in these cases because Balles and Wilson were better qualified than Turner. The only evi-

dence to the contrary is Turner's self-serving claim that she was as qualified as Balles and Wilson, and a plaintiff's subjective assessment of her abilities is insufficient to establish pretext. *See Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir.2001); *Jordan v. Summers*, 205 F.3d 337, 344 n. 9 (7th Cir.2000). Turner also points to positive job evaluations she received throughout the years from her Micro Switch supervisors. But by themselves these evaluations prove only that Turner's supervisors were satisfied with the work she did in the position she held, not that she was deserving of a promotion.

■ Turner next argues that the district court erred in granting summary judgment on her racial harassment claim because her co-workers' use of the term "nigger" created a hostile work environment. But Turner herself did not hear any of her co-workers say "nigger." Given the totality of the circumstances, second-hand reports that racial slurs were overheard in the workplace are insufficient in this case to support a harassment claim. *See Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir.1998). Turner also argues that the court should have allowed her harassment claim to move forward based on her co-workers' accusations that she violated company policies. But these accusations do not rise to the level of severe or pervasive harassment and therefore cannot support a racial harassment claim. *See Cerros v. Steel Techs. Inc.*, 288 F.3d 1040, 1045 (7th Cir.2002). Moreover, the only evidence that Turner has produced to demonstrate that her co-workers were motivated by racial prejudice is her unsupported assertion that two employees who accused her of policy violations were also employees who, Turner had been told, used the word "nigger." Turner has not established that her co-workers made accusations against her because she is African American and not for some other reason.

■ Turner also challenges the court's finding that she could not establish a causal connection between her co-workers' behavior and the charges she filed with the OFCCP and the EEOC. Turner argues that she was transferred to the FN4 position with back pay in exchange for dropping her OFCCP complaint, that Munz and her co-workers knew this, and that their anger over Turner's charges motivated them to accuse her of falsifying her time card and violating company policies and procedures. But Turner points us to no evidence that this behavior was linked specifically to Turner's discrimination charges. Without establishing a causal connection between her co-workers' accusations and her administrative complaints, Turner cannot sustain a retaliation claim. *See Bell v. EPA*, 232 F.3d 546, 554 (7th Cir.2000).

The judgment of the district court is AFFIRMED.