**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 8, 2005
Decided March 9, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 05-2131

| | |
|---|---|
| SANDHYA SINGH,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>TOWN OF MOUNT PLEASANT,<br>RONALD MEYER, MARK GLEASON,<br>et al.,<br>*Defendants-Appellees*. | Appeal from the United States District Court for the Eastern District of Wisconsin.<br><br>No. 01 C 1303<br><br>J. P. Stadtmueller,<br>*Judge*. |

**O R D E R**

Sandhya Singh brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and 42 U.S.C. § 1983, claiming defendants discriminated against her on the basis of race, color, and national origin in creating a hostile work environment, their failure to train her, and her final termination. The district court granted summary judgment to defendants because Singh presented no direct evidence and was unable to establish the requisite *prima facie* case for her claims. For the following reasons, we affirm.

## I.  Background.

In the fall of 1999, the Town of Mount Pleasant (Town) created the position of Deputy Director of Planning and Development (DDPD).  The position required an expertise in, *inter alia*, municipal planning, zoning, and ordinance enforcement.  Essential functions of the position included executing the duties incumbent in the above-mentioned areas and supervising the department when the Director was present and management in his absence. This supervisory role included managing the Department secretary, Juliet Edmands, and interacting with the front office.  Additionally, the DDPD was responsible for communicating Department concerns with other Town departments and with the Town citizens.  This newly created DDPD position was a replacement for the prior Deputy Zoning Administrator (DZA) position.  The extinguished DZA position did not require an advanced degree and was non-managerial in nature.  Additionally, the DDPD was assigned a higher salary to compensate for the advanced requirements and prevent the high turnover rates that had plagued the DZA job.

In October of 1999, plaintiff Sandhya Singh interviewed for the DDPD job.  Singh met the educational qualifications for the position; she had an advanced degree in Urban Affairs and Planning and, at the time, wrote grant proposals to the Department of Housing and Urban Development for the City of Milwaukee.  But the interviewers, Ronald Meyer, the Department Director, and Patrick DeGrave, the Town Administrator in charge of personnel decisions, were initially concerned about her lack of work experience.  When presented with this concern  Singh assured them that she would get up to speed within two months of being hired.  With this assurance in place, Meyer and DeGrave recommended that the Town Board hire her for the position.  The Town subsequently approved her employment contingent on the successful completion of the standard six month probationary period.

Singh was given training materials before she officially started the new job.  On October 29, 1999, she was mailed Town zoning information with other orientation materials.  She began work on December 6, 1999, and was trained by Director Meyer on the particulars of the Town's planning and development process.  Meyer testified that he trained her as he trained the Department's DZA's: by providing relevant ordinances, delegating responsibility, giving her examples of how tasks had been accomplished in the past, reviewing and commenting on drafts, and exposing her to day-to-day planning department operations.  Additionally, Edmands testified to showing Singh around the office and acquainting her with the location of maps, plans, and office paperwork.  DeGrave testified that he saw no difference between the ways in which Singh was trained compared to those that had previously served as DZA's.  Singh also attended meetings with Meyer and received personal preparation for meetings she was instructed to administer.

Singh claims that she attended three meetings with Meyer, but that he and Edmands excluded her from others. Defendants respond that she actively avoided attending meetings for which she was responsible. Singh oversaw the April 19, 2000, Commission meeting in Meyer's planned absence, but only after being forced to do so. Commission Chair Dick Shaffer and Meyer reviewed the agenda with Singh so that she would be prepared. Shortly before the meeting, however, Singh requested a leave of absence that would have spanned the meeting date. This request was denied, and during Singh's oversight of the meeting two significant developments were approved without meaningful site plans or infrastructure requirements. Meyer had to restore the deleted requirements at a subsequent Commission meeting. Racine County later referred the matter back to the town having found the approval unprecedented.

Interpersonal problems developed between Singh and the other employees of the Town within the first few months of her employment. At some point in January 2000, Singh and Mark Gleason, a Town Board member, talked about the holidays. Singh explained that she didn't celebrate Christmas but honored many deities through a variety of festivals. Gleason snickered at the explanation and replied "[o]h, we don't do all that." Additionally, Meyer, Gleason, and Edmands gathered for coffee in the office break room without inviting her. At times, Singh would interrupt these breaks to ask Meyer for advice while she was helping townspeople. Singh claims that Meyer would not come to the public desk to assist the townsperson, but instead had Singh walk back and forth to communicate questions and answers.

Furthermore, Singh and Edmands fought repeatedly. Singh complained to DeGrave and Meyer about the level of respect Edmands' received and ultimately refused to manage her. Both DeGrave and Meyer instructed Singh to utilize Edmands' skills and reminded her that department management was part of her job. In April 2000, a meeting with Meyer, Singh, Edmands, and union steward Karen Theos devolved into a shouting match between the two, and Meyer threatened to fire them both. After the meeting Meyer again reminded Singh that she was Edmands' manager and maintaining their professional relationship was part of her job.

In late April 2000, when the United States and Cuba were at odds over whether a Cuban child, Elian Gonzalez, should be returned to his father in Cuba, Singh overheard a conversation between Meyer and Edmands that made her uncomfortable. Singh entered Meyer's office while he and Edmands were discussing the event and she overheard him say "they should all be sent back." Singh notes that Meyer and Edmands appeared embarrassed when they realized she had heard this remark.

In May 2000, Singh's probationary period ended and Meyer and DeGrave met to discuss her progress. They agreed that she wasn't meeting their expectations on a number of points, including work flow issues with Edmands, code enforcement process, and agenda preparation. As a result of the review, they extended her probation

another six months and provided her with an action plan on June 9, 2000.  The plan was designed to correct these outstanding problems.  Initially Singh responded acknowledging: "I know the action plan and an improved communication will help us all." Tr. Rec. 91, ¶ 9, Ex. H, p.2.  One month later she submitted a complete point by point response further acknowledging that she was behind on her paperwork, with some outstanding matters two months overdue.  But, again she refused to manage Edmands.  Singh also expressed her frustration to DeGrave, who encouraged her to "tough it out." *Id.* at p.1.

Sometime in June or July 2000, DeGrave left his job with the Town and Meyer became the Interim Town Administrator.  In their efforts to recruit a new administrator, the Town published an advertisement for the position that included the phrase: "[m]ust be a U.S. citizen."  Previously, a Canadian citizen had been appointed to one of the Town boards and the matter had caused some controversy amongst the citizens.

Patrick O'Donnell was hired to replace DeGrave that fall.  Singh's performance came up in his initial departmental review with Meyer.  On December 1, 2000, Singh and O'Donnell met to discuss her extended probationary period.  There were still problems and O'Donnell wanted to extend her probationary period a second time.  Singh initially refused and demanded to be either fired or brought on full time.  Ultimately she accepted a three month review period.

During this second probationary period Singh and Meyer met to review her performance, but she continued to have problems.  Singh criticized the administration of the plan when she met with Meyer and had two separate fights with co-workers.  In mid-December she was involved in a dispute with Laurie Heggaton from the Financial Department.  Later that month she argued with Sue Blaha, the Municipal County Clerk, when Singh wanted to cancel a public meeting without sufficient warning.  At approximately the same time, Singh was charged with the administration of the January Planning Commission meeting.  To prepare her for this task, Commission Chair Shaffer, Meyer, and O'Donnell met with her for three hours on January 7, 2001.  Meyer and Singh met again on January 9 to review her action plan and to review the Planning Commission meeting agenda items.  Then on January 15, Shaffer, Singh, and Meyer had to meet for an unprecedented third time to review the agenda.

At this point O'Donnell conducted an independent review of Singh's performance.  During the review he received written confirmation of prior oral complaints made against Singh, including comments from coworkers and townspeople.  As a result, on February 26, 2001, Meyer and O'Donnell recommended that the Town Board fire Singh. In his recommendation O'Donnell noted that Singh exhibited a significant lack of necessary planning experience, was unable to be proactive, didn't get along with others, and lacked maturity and professionalism.  O'Donnell testified that he made his

recommendation independent of Meyer's recommendation and that he did not consider feedback from Edmands or Gleason. The Board voted unanimously to terminate her employment.

Singh brought suit in the Eastern District of Wisconsin alleging a hostile work environment, insufficient training, and that the extension of her probationary period and final termination were all tainted by impermissible considerations of race, color, and national origin in violation of Title VII, 42 U.S.C. § 1981, and § 1983. The district court granted defendants' summary judgment motion and Singh now appeals.

## II. Discussion.

We review the district court's grant of summary judgment *de novo*, construing all facts and drawing all reasonable inferences in favor of the nonmoving party. *Sartor v. Spherion Corp.*, 388 F.3d 275, 277 (7th Cir. 2004). Summary judgment is appropriate if the moving party demonstrates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether a genuine issue of material fact exists, this Court considers evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are facts that "might affect the outcome of the suit" under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Singh erroneously claims that this Title VII matter requires "added rigor" in evaluating the propriety of summary judgment. We rejected any such heightened review in *Alexander v. Wis. Dept. of Health and Human Services*, 263 F.3d 673, 680-81 (7th Cir. 2001).

Singh's complaint alleged a hostile work environment, insufficient training, and that her extended probationary period and termination were tainted by impermissible considerations of race, color, and national origin in violation of Title VII and 42 U.S.C. § 1981. Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). Under § 1981 "all persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. Because Title VII and § 1981 discrimination claims are analyzed in the same manner, we review Singh's primary claims simultaneously. *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 337-38 (7th Cir. 2002). A plaintiff may prove impermissible discrimination with either direct or indirect evidence. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999). Singh acknowledges she has no direct evidence, and so we proceed to examine her indirect evidence.

Where there is no direct evidence, the plaintiff may shift the burden of proof by raising an inference of discrimination at the summary judgment stage. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the burden shifting method, the plaintiff must present sufficient evidence that establishes, by a preponderance of the evidence, each element of the *prima facie* case of discrimination. *Robin v. Espo Eng'g Co.*, 200 F.3d 1081, 1088 (7th Cir. 2000). If the plaintiff succeeds in meeting this burden, a presumption of intentional discrimination arises and the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for the action. *Id.*

We turn first to Singh's claim regarding the allegedly hostile work environment. Racial harassment that is so "severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment violates Title VII," and thus, for our case, § 1981. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (internal quotations and citations omitted). For Singh to establish a *prima facie* case of hostile work environment she must show (1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005) (citations omitted). As the district court noted, Singh fails to establish a *prima facie* case.

These factors are designed to identify conduct that is sufficiently severe or pervasive so that a reasonable person would find it hostile and which the victim himself subjectively sees as abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). This form of the inquiry is intended to "take a middle path between making actionable any merely offensive conduct and requiring tangible psychological injury before the conduct is actionable." *Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) (citing *Harris*, 510 U.S. at 22). Relatively isolated instances of nonsevere misconduct or comments will not support a claim of a hostile environment. *Id.* In determining whether a workplace is hostile we look to the greater context of the actions in question, evaluating the severity, whether something is threatening and humiliating, or merely offensive, and the frequency. *Id.* Whether such an objectively threatening environment exists is a question of law. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999) (citations omitted).

When examining Singh's claims, we find that she cannot show that the few questionable comments created an objectively threatening environment. Singh's primary proof of racial harassment lies in two separate comments: Gleason's unenlightened remark about the Indian holidays and Meyer's comment to Edmands regarding the Elian Gonzalez deportation. While the remarks of Gleason and Meyer may be inappropriate and offensive, they do not rise to the level of creating an objectively hostile work environment. Gleason's remark about the differences between Christian and Indian holidays may have been unenlightened and condescending, but

it was not a direct attack on Singh or her beliefs. *See McPhaul v. Madison County Board of Comm'rs*, 226 F.3d 558, 567. Furthermore, Meyer's remark "that they should all be sent back" was made to Edmands about a political conflict that captivated the attention of the nation. The comment was not directed towards Singh, and while it may indeed have been insensitive, it was not an attack on the plaintiff. *Id.* Furthermore, these two remarks were spread out over at least four months. Two comments over four months in fifteen months of employment can hardly be described as severe and pervasive. Finally, Singh failed to present evidence that these comments interfered with her work performance, or were physically threatening or humiliating. As the district court noted, this failure alone defeats a *prima facie* case for hostile work environment. *See Harris*, 510 U.S. at 21.

The other incidents of which Singh complains are non-racial in character. Her social exclusion in the office, Meyer having lost his temper at times, and Gleason's behavior and concern about her tardiness and investigating her time reports have no distinct racial animus. Additionally, the Town's job advertisement that required U.S. citizenship for the position addressed citizenship, not race, color, or national origin. While Singh provides unsubstantiated hearsay that Gleason proposed the citizenship requirement, she ignores the fact that the hiring followed on the heels of the controversial appointment of a Canadian citizen to a decision-making board of the Town. Beyond this, Singh presents no argument on the issue other than citing *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86 (1973) as a general example that citizenship may be used as a pretext for impermissible discrimination. The primary holding of *Espinoza*, however, affirmed a hiring practice that excluded lawfully admitted resident aliens and reviewed, in detail, the general legality of the Federal government's own U.S. citizenship employment requirement. *Id.* at 89-96. Singh fails to present us with any argument as to how her case differs from this scenario. Plaintiff also makes much of two comments purportedly about her accent, but the record shows only one reported remark that was clearly about her accent, and at oral argument she acknowledged that this statement was unsupported hearsay.[1] Singh's hostile work environment claim fails.

Next we review Singh's allegations of insufficient training. To establish a *prima facie* case of discrimination for failure to train the plaintiff must show that (1) she is a member of a protected group; (2) that the Town provided training to its employees; (3) that she was eligible for training; and (4) "that she was not provided training under circumstances giving rise to an inference of discrimination," i.e., that she was denied

---

[1] The comment was allegedly made between Meyer and Edmands before Singh began working for the Town, and she only learned of it from Bonnie Sorenson. The second remark was communicated to her by Sue Brewer. Brewer told Singh that "[t]hey never thought you would be able to do this. . . ." In testimony Singh acknowledged that she had no context for the statement and that it my have referred to her technical experience.

training given to other similarly situated employees who were not members of the protected group. *See Pafford v. Herman*, 148 F.3d 658, 667 (7th Cir. 1998) (citation omitted). The fourth factor presents our material question.

Singh's argument regarding her inadequate training relies primarily on conclusory statements and is almost wholly unsubstantiated by citations to the record. It is uncontested that the Town's training process for the portions of her job similar to that of the extinguished DZA position were loose. Evidence was introduced showing the prior DZA's were trained in the same manner she was: reviewing ordinances, attending meetings, and becoming oriented with the office materials. Meyer testified that he did all of these things and Edmands testified that she showed Singh around the office, orienting her to the location of maps, ordinances, and work forms. Furthermore, DeGrave testified that he saw no difference between Singh's training and that of prior DZA's. Singh is unable to rebut these specific facts regarding her training, and conclusory allegations unsupported by evidentiary fact are insufficient to defeat a motion for summary judgment. *See Rogers v. City of Chicago*, 320 F.3d 748, 751 (7th Cir. 2003). She emphasizes that she attended only three meetings, but she makes no mention of the training that she received in advance of the Planning Commission meetings that she was instructed to administer or that she requested a leave of absence in an effort to avoid this meeting. Furthermore, the meetings from which Singh was allegedly excluded were open to the general public. We fail to see how the Town could have prevented her from attending and she presents no evidence on the point. Moreover, Singh herself introduced evidence of Meyer aiding her in answering questions asked by townspeople. While she may have preferred him to join her at the front desk so as to avoid having to walk back and forth to communicate questions and answers, this does not mean that Meyer did not assist, and thus train, her in aiding the townspeople. Finally, Singh fails to acknowledge that she was mailed zoning information in the months before she started work, a specific effort on the part of the town to ensure she would have a solid base of knowledge before beginning work. Absent any contrary evidence on these points, Singh may not defeat a motion for summary judgment. *Id.*; *See also Laborers' Pension Fund v. RES Envtl. Servs.*, 377 F.3d 735, 739 (7th Cir. 2004) (citation omitted).

Nor is Singh similarly situated to prior employees of the department. A plaintiff may demonstrate that she is "similarly situated" to a relevant prior employee by "showing that there is someone who is directly comparable to her in all material respects." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (citations omitted). But "a court must look at all relevant factors, the number of which depends on the context of the case." *Id.* In making this latter evaluation, we look to whether the employees had the same job description, dealt with the same supervisor, were subject to the same standards, and if they had comparable "experience, education and qualifications" if the employer took these factors into consideration. *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 531-32 (7th Cir. 2003) (citations omitted). The DDPD

position was created by the Town prior to her hiring. This new job required an advanced degree and explicitly included the responsibility for managing the department in the absence of the Director of Planning and Development. None of the previously employed DZA's were required to have this advanced degree, either as an initial or continuing condition of employment. Furthermore, the DZA's were not required to manage or supervise the department in the absence of the Director. These differences, coupled with the training Singh did receive, defeat her attempt to establish the requisite *prima facie* case, and her claim fails.

Finally we review Singh's claims regarding her extended probationary period and ultimate termination. To meet the *prima facie* case for a discriminatory corrective action she must show (1) she is the member of a protected class; (2) she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees who were not members of the protected class were treated more favorably. *Vakharia*, 190 F.3d at 806. Singh is unable to show that she was meeting her employer's legitimate expectations at the time of her first or second probation extensions or prior to being fired.

We have previously held that an employer's expectation's are legitimate if they are *bona fide. See Coco v. Elmwood Care*, 128 F.3d 1177, 1179 (7th Cir. 1997). This has nothing to do with whether they are too demanding. *Robin*, 200 F.3d at 1090. Where it appears the employer's expectations for the employee were the actual expectations, the court will presume those expectations *bona fide. See Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999). Singh may rebut this presumption by showing that the expectations are fabricated or by producing evidence showing the expectations were applied in a disparate manner. *Coco*, 128 F.3d at 1180; *Curry v. Menard, Inc.*, 270 F.3d 473, 477-78 (7th Cir. 2001). Because she can do neither, we look to see whether she met these *bona fide* expectations. Furthermore, because we have rejected Singh's failure to train claim, we conduct this examination independent of her prior argument. *Maarouf v. Walker Mfg.*, 210 F.3d 750, 753 (7th Cir. 2000).

Singh was expected to be up to speed and able to assume management of the department within two months. She represented that she would be capable of doing this during her interview, and despite her attempts to describe this fact away in testimony, there is no genuine issue here. To facilitate this accelerated responsibility, the Town mailed Singh a copy of its zoning information well in advance of her start date. Moreover, she attended meetings with her supervisor and received personal preparation in advance of meetings she was expected to administer, yet, she was unable or unwilling to fulfill her duties. Singh does not dispute that when she was asked to assume Meyer's responsibilities during his planned absence in the spring of 2000 she requested a leave of absence to avoid the situation. Nor does she deny that despite the preparation given by Planning Commission Chair Shaffer and Meyer, she approved two inadequate development plans that were criticized by the County. Nor

does she deny that she openly argued with Edmands in a meeting and repeatedly refused to manage her.  In light of these facts, Singh cannot show she was meeting her employer's legitimate expectations in June 2000 when she was placed on her initial probation extension.

Nor can Singh establish a *prima facie* case regarding the second extension of her probationary period.  While Meyer was operating as the interim Town Administrator for much of the second half of 2000, and therefore unable to provide extensive supervision, there is no evidence to show that Singh's questionable management had improved other than her unsupported statements arguing she met all legitimate expectations.  Singh fails to address the fact that she continued to neglect her duties towards Edmands and responded to the action plan by rejecting the relevance of this management aspect of her position.  We note that "[g]eneral averments of adequate performance . . . are ordinarily insufficient to create a factual issue on summary judgment; rather [plaintiff] must specifically refute the facts which allegedly support the employer's claim of deficient performance." *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir. 1995) (citations omitted).

Finally, regarding her termination, plaintiff again fails to establish the *prima facie* case for discrimination.  Singh cannot show that she met the legitimate expectations of the town throughout her fifteen months of employment.  She does not deny that during her extended probationary period she publicly argued with co-workers Sue Blaha and Laurie Heggaton in December 2000 and with Meyer in January 2001, or that the Department received complaints about her work.  Finally, she cannot refute O'Donnell's independent assessment that after fifteen months of employment she still lacked the requisite skills for the position.

Finally, we review Singh's § 1983 equal protection claim.  She argues that the district court erred in dismissing her claim against Gleason and Meyer because she was (1) treated differently from others who were similarly situated; and (2) the defendants intentionally treated her differently because of her membership in the classes to which she belongs. *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950-51 (7th Cir. 2002).  Her argument, however, unwisely relied on her Title VII and § 1981 claims without any separate analysis.  For the reasons that the above claims failed we now affirm the dismissal of her § 1983 claim, too.

### III.  Conclusion.

We AFFIRM the district court's grant of summary judgment in favor of the defendants.