2020 IL App (1st) 191658-U

No. 1-19-1658

Order filed July 28, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| TRACEY J. ELLIS, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| | ) | |
| v. | ) | Charge No. 2018 CF 0136 |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, THE | ) | |
| DEPARTMENT OF HUMAN RIGHTS, and THE | ) | |
| SALEM GROUP, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

PRESIDING JUSTICE FITZGERALD-SMITH delivered the judgment of the court. Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The decision of the Human Rights Commission sustaining the Department of Human Rights' dismissal of petitioner's charge of discrimination based on a lack of substantial evidence is affirmed.

¶ 2    Petitioner Tracey Ellis appeals *pro se* from a final decision entered by the Human Rights Commission (Commission) sustaining the Department of Human Rights' (Department) dismissal

of her charge of employment discrimination by The Salem Group (Salem), an employee staffing firm, pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2016)). For the reasons that follow, we affirm.

¶ 3    On August 2, 2017, petitioner filed a charge of discrimination with the Department. In the charge, petitioner alleged that because of her race (black) and sex (female), her Salem coworker harassed her, Salem failed to correct the situation, and Salem subsequently discharged her.

¶ 4    The Department investigated the charge. According to the investigator's report, petitioner began training with one of Salem's clients, Informis, on July 24, 2017. Petitioner stated that during training on July 28 and 29, 2017, a white male trainee, Kevin Peyton, twice bumped her chair without apologizing. On July 29, 2017, she reported Peyton's conduct to an Informis instructor. On July 31, 2017, she reported Peyton's conduct to Donna Piemonte, a non-black female and Salem's staffing manager. According to petitioner, neither the instructor nor Piemonte took corrective action against Peyton.

¶ 5    Tylene Kami, a non-black female and Salem's human resources director, stated that on July 30, 2017, Tracy Wojo, a non-black female and Salem's staffing operations and development manager, received an email from Informis management requesting that petitioner be removed from the assignment because of unsatisfactory performance. The email explained that during the training, petitioner distracted coworkers by engaging in loud and extensive conversations with herself about politics.

¶ 6    On July 31, 2017, petitioner was informed she was no longer being considered for temporary placement with Informis. Petitioner stated that she was not provided any explanation

for her removal, that she had not previously received any performance evaluations or disciplinary actions during her assignment, and that no other trainees were removed from the assignment.

¶ 7    Kami denied that petitioner reported any incidents of harassment prior to her removal. Hours after petitioner was informed of her removal, she sent an email addressed to Piemonte to Salem's human resources department. According to the investigator's report, petitioner's email stated that a "white foreign British male" rudely bumped against her chair and the instructors failed to take corrective action on her behalf. Kami contacted Piemonte and instructed her to contact petitioner and Informis to begin a full investigation into petitioner's allegations.

¶ 8    On August 1, 2017, petitioner sent another email addressed to Piemonte to Salem's human resources department. According to the investigator's report, petitioner stated in the email that Peyton was a "white southern male who appeared foreign [and] was an ignorant American hillbilly," and that Salem did not "pre-screen very well."

¶ 9    On August 2, 2017, Kami and Wojo attempted unsuccessfully to contact petitioner via telephone and email. Eventually, Wojo reached petitioner by telephone, but petitioner refused to provide additional details regarding her allegations and stated she was not interested in speaking with Salem and was pursuing a charge with the Department.

¶ 10    Salem's investigation did not find evidence to substantiate petitioner's claim, and Informis did not have records of a former or current white male trainee with Peyton's name. Informis confirmed that petitioner did not report any potential harassment or discrimination to the training staff, and there were no other such complaints against Salem.

¶ 11    After her removal, petitioner contacted members of Informis's executive management without Salem's approval, which violated Salem's conditions of employment. Additionally,

although petitioner was told on three occasions that the email address she used to report the alleged harassment was used solely for insurance enrollment purposes, and she needed to contact Salem's staffing center to receive a timely response, petitioner continued to direct emails to that incorrect address. Kami stated that because of these actions, Salem doubted its ability to place petitioner on a temporary assignment in the future, so on August 3, 2017, Salem terminated her.

¶ 12    The Department's investigator recommended a finding of lack of substantial evidence that petitioner was harassed based on her race or sex because the conduct petitioner described, *i.e.*, Peyton bumping her chair, did not rise to the level of harassment for discrimination. The investigator found that these incidents were isolated and did not establish a discriminatory practice towards petitioner's protected categories. Moreover, petitioner failed to provide proof that Salem had a discriminatory motive. The investigator also recommended a finding of lack of substantial evidence that petitioner was discharged because of her race or sex because petitioner exhibited disruptive behavior during training, causing Informis to ask Salem to remove her. At that time, however, petitioner was not discharged and remained eligible for another assignment. The Department dismissed petitioner's charge for lack of substantial evidence on July 20, 2018.

¶ 13    On July 30, 2018, petitioner filed a request for review with the Commission. In her request, petitioner claimed that Peyton harassed her because he was "jealous to see her face as an executive professional," and that Salem was "jealous" of her "professional high blue face standards *** in attendance at a location of her choice, and with good ethics, as a licensed white collar executive."

¶ 14    On August 13, 2019, the Commission sustained the Department's dismissal of petitioner's charge for lack of substantial evidence. The Commission found that petitioner failed to establish a *prima facie* case of harassment. The Commission stated that Peyton twice bumping petitioner's

chair and not apologizing did not rise to the level of actionable harassment because the conduct did not "permeate the workplace with discriminatory intimidation, ridicule, and insult so severe or pervasive as to create an abusive environment." Moreover, there was no evidence that Peyton bumped petitioner's chair because of her race or sex, and Salem could not be liable because no alleged acts of harassment occurred after petitioner complained about Peyton's behavior on July 31, 2017. The Commission also found that Salem investigated petitioner's claims and could not locate a trainee with Peyton's name, and petitioner refused to provide Salem with additional details.

¶ 15    On petitioner's discriminatory discharge claim, the Commission found that she had not established her *prima facie* case because she was not discharged on July 31, 2017. Instead, she was told that Informis requested that she no longer be assigned there, but remained eligible for placement at that time. Salem discharged petitioner a few days later, but the Commission did not review this action for discriminatory animus because her charge was filed with the Department one day before the discharge occurred.

¶ 16    On August 19, 2019, petitioner filed a petition for direct administrative review with this court.

¶ 17    As an initial matter, we observe that petitioner's *pro se* brief fails to comply with many of the requirements of Illinois Supreme Court Rule 341 (eff. May 25, 2018), which governs the content of appellate briefs. For example, her statement of facts contains argument. See Ill. Sup. Ct. R. 341(h)(6) (eff. May 25, 2018). In turn, her brief omits an argument section entirely. See Ill. Sup. Ct. R. 341(h)(7) (eff. May 25, 2018). Compliance with the supreme court rules is mandatory, and we may strike a brief for failure to comply with the rules. *McCann v. Dart*, 2015 IL App (1st)

141291, ¶ 12. Nevertheless, because petitioner made an effort to present her appeal by use of the approved form brief, it is clear from her brief that she challenges the Commission's final decision, and we have the benefit of the Commission's brief, we choose not to dismiss the appeal on that ground. As the issues are evident and the merits of the appeal can be readily ascertained from the record on appeal, we proceed to the merits of the appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2011).

¶ 18    Relevant here, the Act provides that it is a civil rights violation for an employer to engage in harassment, or to discharge a person on the basis of "unlawful discrimination." 775 ILCS 5/2-102(A) (West 2016). "Harassment" includes "any unwelcome conduct" on the basis of a person's race or sex "that has the purpose or effect of substantially interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment." 775 ILCS 5/2-101(E-1) (West 2016). "Unlawful discrimination" includes discrimination against an individual because of her race or sex. 775 ILCS 5/1-103(Q) (West 2016).

¶ 19    A case under the Act is commenced by an aggrieved party's written charge filed with the Department. 775 ILCS 5/7A-102(A)(1) (West 2016). The Department then investigates to determine whether there is substantial evidence that the alleged civil rights violation occurred. 775 ILCS 5/7A-102(C)(1) (West 2016). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2016). If the Department finds there is no substantial evidence that the Act was violated, the charge is dismissed. 775 ILCS 5/7A-102(D)(3) (West 2016). The charging party may then commence an

action in the circuit court or, as petitioner did here, file a request for review of the dismissal with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2018).

¶ 20    Upon a properly filed request for review, "the Commission may consider the Department's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Department in response to the request." 775 ILCS 5/8-103(B) (West 2018). Judicial review of the Commission's final decision is sought by the filing of a petition for review with this court. 775 ILCS 5/8-111(B)(1) (West 2018).

¶ 21    We review the Commission's final decision sustaining the dismissal of a discrimination charge for lack of substantial evidence under an abuse of discretion standard. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶¶ 32-33. Thus, we reverse the Commission's decision only if it was arbitrary and capricious, *i.e.*, if it contravenes legislative intent, fails to consider a critical aspect of the matter, or offers an explanation so implausible it cannot be regarded as an exercise of the Commission's expertise. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010). The Commission's findings of fact "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2018). We will not reweigh the evidence or substitute our judgment for that of the Commission. *Owens*, 403 Ill. App. 3d at 917.

¶ 22    In analyzing employment discrimination claims under the Act, the Commission applies the analytical framework used by the United States Supreme Court in cases brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*). *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178 (1989). Illinois courts look to the decisions of the United States

Supreme Court and the United States Court of Appeals for the Seventh Circuit in interpreting the Act. See *Zoepfel-Thuline v. Black Hawk College*, 2019 IL App (3d) 180524, ¶ 26.

¶ 23    Petitioner first charges that she was harassed because of her race and sex when Peyton bumped her chair and refused to apologize. In the employment context, harassment is "conduct that unreasonably interferes with a person's work performance or creates an intimidating, hostile, or offensive work environment." *Ngeunjuntr v. Metropolitan Life Insurance Co.*, 146 F.3d 464, 467 (7th Cir. 1998). Such conduct must be "sufficiently severe or pervasive that a reasonable person would find it hostile and the victim himself subjectively sees as abusive." *Id.* To constitute actionable harassment, an employee must face a "steady barrage" of offensive comments, and "[m]ore than a few isolated incidents of harassment." *Village of Bellwood Board of Fire & Police Commissioners v. Human Rights Comm'n*, 184 Ill. App. 3d 339, 350 (1989). An employer may avoid liability if it promptly investigates a complaint and, if necessary, takes reasonable steps to stop the harassment. *Lucero v. Nettle Creek School Corp.*, 566 F.3d 720, 731 (7th Cir. 2009).

¶ 24    Here, petitioner failed to allege a satisfactory harassment claim. Petitioner's harassment claims are based on another trainee named Peyton twice bumping her chair and refusing to apologize, which, if taken as true, does not amount to harassment so severe or pervasive such that a reasonable person would find it hostile. See *Ngeunjuntr*, 146 F.3d at 467. Additionally, Informis promptly investigated petitioner's claims, and could not locate a trainee with Peyton's name. Moreover, petitioner did not allege any further harassment following her initial complaint regarding Peyton, and thus, Salem cannot be liable for any alleged harassment. Therefore, the Commission did not abuse its discretion in finding a lack of substantial evidence of harassment.

¶ 25    Petitioner next charges that she was discharged because of her race and sex. A complainant may prove discrimination by either presenting direct evidence that race or sex was a determining factor in the employment decision, or she may use the indirect method of proof for Title VII cases set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lalvani v. Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). Under the indirect method of proof, a complainant must make a *prima facie* showing of discrimination in that she (1) was a member of a protected class, (2) was meeting her employer's legitimate business expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly-situated employees outside her protected class. *Young*, 2012 IL App (1st) 112204, ¶ 34. If a *prima facie* case is established, a rebuttable presumption arises that the respondent unlawfully discriminated against the complainant, which the respondent can rebut by articulating a legitimate, nondiscriminatory reason for its actions. *Zaderaka*, 131 Ill. 2d at 179. If the respondent does so, the complainant can prove that the articulated reason was a pretext for unlawful discrimination. *Id.* The ultimate burden always remains on the complainant. *Id.*

¶ 26    Here, petitioner's discriminatory discharge claim fails because she had not been discharged when she filed her charge with the Department. On July 31, 2017, petitioner was informed she was no longer being considered for temporary placement with Informis. Despite her removal from that assignment, petitioner remained eligible for a different placement through Salem until August 3, 2017, when she was terminated. Therefore, when petitioner filed her discriminatory discharge claim with the Department on August 2, 2017, she had not yet been discharged.

¶ 27    Even if petitioner established she had been discharged on that date, however, she would still fail to establish the second and fourth prongs of a *prima facie* case of discrimination. In a

disparate punishment case, the second and fourth elements merge and we focus on whether petitioner can establish that she received dissimilar punishment than that received by a similarly situated employee who was outside her protected class. See *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008). "A similarly situated employee need not be 'identical,' " but petitioner "must show that the other employee 'dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances' " as would distinguish her conduct or Salem's treatment of her. *Id.* (quoting *Gates v. Caterpillar*, *Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)).

¶ 28    Here, the evidence shows that petitioner was removed from her assignment after she engaged in disruptive behavior during training, namely, talking loudly to herself about politics, and that Salem was unaware of petitioner's harassment allegations until after they had removed her. Salem only discharged petitioner after she after she contacted members of Informis's executive management without Salem's approval, which violated Salem's conditions of employment, and ignored Salem's repeated requests to contact Salem's staffing center instead of an email used for insurance purposes. Petitioner has not presented any evidence that other trainees behaved similarly without suffering like consequences, and thus, has failed to demonstrate a *prima facie case* of discrimination. See *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999) ("A petitioner's discrimination charge consisting of mere speculation and conjecture does not constitute substantial evidence**.**"). Accordingly, the Commission did not abuse its discretion in finding a lack of substantial evidence of a discriminatory discharge.

¶ 29    For the foregoing reasons, the Commission's decision sustaining the Department's dismissal of petitioner's charges for lack of substantial evidence is affirmed.

¶ 30    Affirmed.