# In the

# United States Court of Appeals

## For the Seventh Circuit

―――――――――

No. 04-2066

THAD A. SHAFER,

*Plaintiff-Appellant,*

v.

KAL KAN FOODS, INC.,
and ALAN DILL,

*Defendants-Appellees.*

―――――――――

Appeal from the United States District Court
for the Central District of Illinois.
No. 03-2021—**Harold A. Baker**, *Judge.*

―――――――――

ARGUED MARCH 2, 2005—DECIDED AUGUST 1, 2005

―――――――――

Before BAUER, EASTERBROOK, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* During the summer of 2001 Thad Shafer had four frightening encounters with Alan Dill, one of his co-workers at Kal Kan Foods. Six months after the last of these Shafer was fired. He contends that Kal Kan discharged him in retaliation for his complaints about Dill, complaints that he insists are protected by Title VII of the Civil Rights Act of 1964. See 42 U.S.C. §2000e-3(a). For its part, Kal Kan submits that it let Shafer go because his personal life affected his conduct at work.

Shafer was upset about the fact that his wife had affairs with two men who worked at Kal Kan, and when quarrels broke out between Shafer and his rivals Kal Kan first warned and then sacked him. The district court granted summary judgment in Kal Kan's favor and dismissed the complaint against Dill without prejudice to renewal in state court. 28 U.S.C. §1367(c)(3).

The resolution of Shafer's wrongful-discharge claim is not open to serious doubt. When Dill harassed and assaulted him, Shafer complained to Cindy Hargis, whom he thought to be the appropriate recipient of such complaints. (Hargis swears that Shafer did not tell her about Dill's behavior, but on summary judgment a court must accept Shafer's evidence.) Hargis left Kal Kan's employ in October 2001 without generating any written records about Shafer's complaints—and, Shafer says, without having done anything about them or asked anyone else to intervene. Those who decided to fire Shafer in February 2002 thus did not know about his complaints the prior summer and cannot have been trying to penalize him for making them.

*Post hoc ergo propter hoc* is not a good way to establish causation. See *Oest v. Illinois Department of Corrections*, 240 F.3d 605, 616 & n.8 (7th Cir. 2001); *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998). Shafer insists that, because he was a good worker, and the others involved were not cashiered, his complaints *must* have caused his discharge. That approach would turn the federal judiciary into a body of employment arbitrators asking whether personnel decisions are supported by "just cause." The lack of "just cause" would establish that forbidden discrimination or retaliation was the real cause. That's not what federal law says. The burden of persuasion is the plaintiff's. Whether or not Kal Kan responded in the best way to the workplace acrimony traceable to Dinah Shafer and her lovers, such matters are outside the scope of Title VII. See *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir. 1987).

   Whether Shafer was a victim of sex discrimination dur-
ing 2001, and thus potentially entitled to compensatory
damages under 42 U.S.C. §1981a, is a more difficult ques-
tion. He had worked at Kal Kan without incident from 1989
until June 2001, when Dill attacked him. Dill, employed by
Kal Kan since 1983, had not bothered Shafer before; what
happened in 2001 to change this is not clear. (Dill was not
one of his rivals for Dinah's affections.) But the encounters
were dramatic: beyond bullying language and sexual innu-
endo were four assaults and batteries.

   Dill is about six inches taller and at least 100 pounds
heavier than Shafer. He used the difference to advantage.
In June 2001 Dill, who earlier had remarked that Shafer
has a "cheerleader ass" that "would look real nice on my
dick," forced Shafer's face down to his crotch (while clothed),
moving his groin to give the impression that Shafer was
performing fellatio. A few weeks later, in the same com-
pany, Dill grabbed Shafer's hand and moved it to his crotch
(again while clothed) while moaning as if Shafer were
masturbating him. The force was enough to put Shafer in
fear that Dill would break his arm. The next month Dill
approached Shafer in the locker room when Shafer was not
wearing a shirt and pulled a handful of hair from Shafer's
chest, causing considerable pain. Finally, in August 2001
Dill bit Shafer in the neck hard enough to raise welts,
though not to penetrate the skin. All four episodes appear
to be designed to demonstrate physical domination.

   We may assume that Dill set out to humiliate Shafer
sexually and in other ways. But Title VII does not deal with
co-workers' torts. It addresses discrimination by employers.
See 42 U.S.C. §2000e2(a)(1). Shafer encounters difficulty
with both the "discrimination" branch and the "by the
employer" branch. We start with the latter.

   Dill was not a supervisor. Shafer's salary, duties, and
promotion opportunities were unaffected. Dill was pursuing

a personal agenda, and his conduct would not be imputed to the employer under standard agency principles. The special rules of attribution adopted for employment-discrimination litigation in *Faragher v. Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), are designed for supervisors' behavior. See also *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). The most that one could say is that Kal Kan might be accountable for Dill's misconduct on a ratification theory if it knew what was going on and did nothing helpful in response. Yet Shafer had not been troubled for his first 12 years (since his hire in 1989), so Kal Kan had no reason to suspect a problem. Dill had a history of making sexual remarks, but no history of attacking other workers physically. This makes it impossible to show discrimination via the employer's knowledge that working conditions are worse for one sex coupled with failure to intervene. See *Durkin v. Chicago*, 341 F.3d 606, 611-13 (7th Cir. 2003); *Hall v. Bodine Electric Co.*, 276 F.3d 345, 356-57 (7th Cir. 2002).

Although Shafer contends that he complained orally to Hargis, he offers no evidence (other than his say-so) that she was the appropriate recipient. Kal Kan presented evidence that by the summer of 2001 Hargis was no longer a personnel officer; Shafer has not supplied contrary evidence (such as, for example, flyers or an employee handbook telling employees to take their complaints to Hargis). Nothing in the record suggests that Hargis would (or could) have done anything to assist a woman who complained to her during the summer of 2001; Shafer does not offer any reason to believe that Kal Kan as a whole shelters women but not men from aggressive co-workers. What is more, Shafer concedes that when he finally told his supervisor about the problem—which he did not do until after the fourth attack—Dill's aggression ended. Whether this is because Dill got wind that he might be in trouble, or be-

cause the supervisor intervened, does not matter; in either event, Shafer was not hassled after the biting incident in August 2001.

Then there is the question whether Dill's behavior was sex discrimination. Sexual horseplay differs from sex *discrimination*, and Title VII covers only discriminatory conduct. The Court stated in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), that even sexually explicit roughhousing among men must be distinguished from sex discrimination. Only when severe or pervasive conduct creates an objectively hostile or abusive working environment, so that the conditions of employment differ on account of sex or another forbidden ground, is Title VII implicated. See also, e.g., *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 950-51 (7th Cir. 2005).

What happened to Shafer was not a "pervasive" deterioration in conditions of his employment on account of sex; most of his time at Kal Kan was untroubled. Dill committed four batteries. This does not establish that working conditions at Kal Kan were worse for men than for women. Shafer became a target because he could not defend himself. By contrast, in *Shepherd v. Slater Steels Corp.*, 168 F.3d 998 (7th Cir. 1999), and *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008 (7th Cir. 1998), the sex-related harassment was daily fare. For all this record shows, men at Kal Kan generally had placid working conditions (as Shafer himself did most of the time), while Dill picked on anyone of either sex he could get away with tormenting. Shafer has not established that his encounters with Dill reflected more than personal animosity or juvenile behavior. See *Hamm v. Weyauwega Milk Products, Inc.*, 332 F.3d 1058 (7th Cir. 2003); *Johnson v. Hondo, Inc.*, 125 F.3d 408, 412-13 (7th Cir. 1997).

Even brief episodes of unwelcome sexual contact can impose harms that meet the "severe" part of the Supreme

Court's "severe or pervasive" formula. Events described in *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798 (7th Cir. 2000), offer an illustration. Payton kissed Hostetler against her will and forced his tongue into her mouth; the next day he grabbed her and began to remove her bra, putting her in fear of rape, before being stopped by the unexpected entry of another employee. What turned sexual assaults by a co-worker (which do not violate Title VII) into sex *discrimination* by the *employer* (which does) was the management's response: instead of firing or disciplining Payton, the firm decided to separate the pair by moving Hostetler to a distant and less desirable restaurant. In other words, the firm forced the female victim to bear the costs of "solving" the problem. That was express and intentional discrimination. Compare *Smith v. Sheahan*, 189 F.3d 529, 535 (7th Cir. 1998), with *Campbell v. Ingersoll Milling Machine Co.*, 893 F.2d 925 (7th Cir. 1990). Nothing of the sort happened to Shafer at Kal Kan.

If Shafer is describing events accurately, he has a solid claim against Dill under state tort law for both assault and battery. What he lacks, however, is a claim against Kal Kan for sex discrimination. The district court has protected Shafer's tort claim by dismissing it without prejudice. The judgment dismissing the Title VII claim on the merits is affirmed.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*