In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-2201

CAROL L. ISAACS,

*Plaintiff-Appellant,*

*v.*

HILL'S PET NUTRITION, INC., and
COLGATE-PALMOLIVE COMPANY,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:03-cv-0348-LJM-VSS—**Larry J. McKinney**, *Chief Judge.*

---

ARGUED MARCH 30, 2007—DECIDED MAY 4, 2007

---

Before EASTERBROOK, *Chief Judge*, and BAUER and
WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* Carol Isaacs worked for
Hill's Pet Nutrition, packaging pet food and preparing
the bags for shipment, for more than five years. In 2002
and 2003 she filed charges of sex discrimination with the
EEOC, contending that her employer violated Title VII of
the Civil Rights Act of 1964. The district court granted
summary judgment against Isaacs, who had sued not only
Hill's but also Colgate-Palmolive, its corporate parent. As
the district court remarked, Colgate was not Isaacs'
employer, and she offers no reason why an investor should

be liable for Hill's acts. Cf. *United States v. Bestfoods*, 524 U.S. 51 (1998). We need not mention Colgate again.

Many of Isaacs' claims in this litigation are outside the scope of the administrative filings. She complains, for example, about her discharge in 2005, but she never filed a charge concerning that event, and the charges in 2002 and 2003 could not have alerted the employer to a grievance about events yet to occur. A short interval between the charge and the complained-of events might not have impeded investigation and conciliation: if Isaacs had been fired a week after her charge, the EEOC would have learned this in the course of its investigation, but the gap was much longer and precluded any administrative inquiry. The same is true of her assertion that the firm retaliated against her for filing these charges and attempting to protect her rights. If she wanted to litigate such a theory, she had to use the administrative process first. Her other arguments likewise are well covered by the district court's opinion and need not be addressed here—all but one, that is.

A claim of a hostile work environment was presented in the 2003 charge. The Supreme Court treats a hostile work environment as one unlawful employment practice. See *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115-21 (2002). The employee may complain about any of the constituent acts, no matter how long ago they occurred, as long as the charge is filed within 300 days of any harassing act.

Hill's does not invoke the doctrine of laches, which curtails prejudicial delay. See *Pruitt v. Chicago*, 472 F.3d 925 (7th Cir. 2006). Instead it argues, and the district court found, that despite *Morgan* the hostile work environment that Isaacs claims to have experienced was *not* a single employment practice. Instead, the district court found, it was two practices: one that Isaacs experienced

when she worked on the Packaging Team (February 2000 through October 15, 2001) and another when Isaacs worked on the Stretchwrap Team (October 15, 2001, through October 3, 2003). The Packaging Team bags the products; the Stretchwrap Team puts the bags on wooden pallets, applies plastic wrap, and loads them onto trucks for shipment. The teams have different leaders and work in different parts of the plant—though not far apart, since the Packaging Team delivers the bags to the Stretchwrap Team.

This change of job assignment means, Hill's contends, that the conditions that Isaacs experienced while with the Packaging Team may not be considered, as they occurred more than 300 days before her charge. And the conditions she experienced with the Stretchwrap Team were not severe enough to constitute a hostile working environment, the district judge concluded. The judge summarized what he understood to be Isaacs' claims about conditions on the Stretchwrap Team:

> 1) [Isaacs] glimpsed objectionable materials on computer screens two times; 2) she frequently heard comments over the radio in Stretchwrap about "dragging my wood," or "my wood's awful long" that she took to be sexual references [a *double entendre*, with the non-sexual meaning referring to the wooden pallets]; 3) Pebworth [the team leader in Stretchwrap] twice told her that her rear end was so big that two men could climb on it; 4) Pebworth made crying sounds over the radio in an effort to mock her, used the word "bitch" in her presence a few times, and the term "fucking bitch" twice in reference to someone other than Isaacs.

We may assume (without deciding) that, if this is all there was to it, the conditions were unpleasant but not serious

or pervasive enough to violate Title VII. See *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81-82 (1998); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Yuknis v. First Student, Inc.*, No. 06-3479 (7th Cir. Mar. 28, 2007). But this is not all there was to it, for events during her entire employment with Hill's should have been considered.

When deciding that Isaacs experienced two distinct episodes of hostile work environment, the district court concentrated on the identities of her harassers. One group of men made life hard for her in Packaging; a different group vexed her in Stretchwrap. But why should this matter? Isaacs has not sued her co-workers; the entity responsible for complying with Title VII is the employer, of which Isaacs had just one. And employers are not vicariously responsible for misconduct in the workplace; employers are responsible for their own conduct (or omissions)—which is to say, for how they respond (or fail to respond) after receiving notice that an employee may be suffering from disparate treatment at co-workers' hands. See *Faragher v. Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Dunn v. Washington County Hospital*, 429 F.3d 689 (7th Cir. 2005). (Isaacs does not contend that she suffered any adverse "tangible employment action," within the meaning of *Faragher* and *Ellerth*, or that Hill's is responsible for the conduct of a "supervisor.")

As Isaacs related events, she complained repeatedly to supervisors and management-level personnel at Hill's Pet Nutrition about how the men were treating her, and she received the same response every time: one or another variation on "grin and bear it." The employer's approach thus remained constant. Doing nothing after receiving multiple complaints about serious conditions is a straight road to liability under Title VII. See *EEOC v. Indiana Bell Telephone Co.*, 256 F.3d 516 (7th Cir. 2001) (en banc).

An employee moved from one plant to another, where a different set of managers made decisions about working conditions, might well experience different hostile environments for the purpose of *Morgan*. As long as the employee remains within a single chain of command, however, and the same people control how the employer addresses problems in the workplace, there is only one employment practice, and all events may be considered (subject to the possibility of laches) to determine whether that employment practice violates Title VII. Isaacs therefore is entitled to present for consideration her treatment throughout her employment at Hill's Pet Nutrition.

Ample evidence would allow a trier of fact to conclude that Isaacs was subjected to a pervasively hostile environment, designed by the male workers to drive women from the plant or at least express domination and control over them. Isaacs testified by deposition that her team leader in Packaging refused to train her unless she listened to him describe his sexual exploits and desires. When she told him to stop, all that stopped was the training—the sexual comments continued over the radio (workers in both Packaging and Stretchwrap used radios, on a single frequency, to coordinate their activities) and whenever they met. The radio carried not only the talk about the men's "wood" but also moaning sounds whenever the men knew that Isaacs was listening. According to one of Isaacs' female co-workers, simulating the sounds of sex "was [the men's] favorite thing to do on the radio."

When Isaacs moved from Packaging to Stretchwrap, the two team leaders met to discuss her, and Isaacs' new superior (Pebworth) picked up where her old one left off. When she complained, Pebworth "accidentally" ran into her with a forklift, spilling 700 pounds of pet food, and remarked: "See what can happen to you, bitch." Her car was vandalized in the parking lot a few days later. Pebworth repeatedly tried to get Isaacs to join him in

viewing pornography that he kept on a computer in the plant. Several women in addition to Isaacs gave evidence that men systematically made the lives of women in the plant miserable—and since the team leaders were the main offenders, other men felt no hesitation in joining this jolly good fun.

A jury could infer that working conditions for female laborers at Hill's Pet Nutrition were materially worse than the conditions for male laborers, that managers of the firm knew this, and that they did nothing because the firm deemed the men's morale more important than the women's welfare. That conclusion would be enough to support an award of damages under Title VII.

The judgment is affirmed, except with respect to the hostile-working-conditions claim. On that subject the judgment is reversed and the case remanded for trial.

A true Copy:

      Teste:

 

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*