In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3927

ELIZABETH A. BRIGHT,

*Plaintiff-Appellant,*

*v.*

HILL'S PET NUTRITION, INC., and
COLGATE-PALMOLIVE COMPANY,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:03-cv-1709-DFH-TAB—**David F. Hamilton**, *Judge.*

ARGUED NOVEMBER 30, 2007—DECIDED DECEMBER 21, 2007

Before EASTERBROOK, *Chief Judge*, and FLAUM and
WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. The Supreme Court held
in *National Railroad Passenger Corp. v. Morgan*, 536 U.S.
101, 115–21 (2002), that a hostile working environment
is a single unlawful practice under Title VII of the Civil
Rights Act of 1964. A charge of discrimination based on
such a practice covers all events during that hostile
environment, if the charge is filed within 300 days (180
days in some states) of the last act said to constitute the
discriminatory working condition. 42 U.S.C. §2000e–
5(e)(1). We held in *Isaacs v. Hill's Pet Nutrition, Inc.*, 485

F.3d 383 (7th Cir. 2007), that hostile working conditions at a single place of employment are a single unlawful practice. Title VII creates responsibilities for "employers" as entities. Employers may not turn a practice that *Morgan* deems unitary into two or more distinct practices by calling each subdivision of the workplace a separate "team." Most employers—and Hill's Pet Nutrition is no exception—allow plant managers and human-relations departments to control working conditions plant-wide. When a single managerial staff or chain of command decides to permit the men in the workplace to make life miserable for the women, that is a single unlawful practice whether or not a particular woman moves from one team to another within the plant.

Carol Isaacs initially worked on a Packaging Team at Hill's Pet Nutrition in Richmond, Indiana, and was transferred to a Stretchwrap Team. Jackie Vanderpool supervises all human-relations issues at the Richmond plant and reports to a plant manager with authority over everything that happens there. We held that all events during Isaacs's employment at the plant could be considered as part of one practice, even though many of the incidents about which she complained had occurred more than 300 days before she filed her charge.

Elizabeth Bright was hired at the Richmond plant during February 2000, the same month as Isaacs, and quit in November 2002. While Isaacs started with a Packaging Team, Bright was assigned to a Processing Team, where she worked for about 10 months before being transferred to a Stretchwrap Team. Between October 2001 and November 2002, both Isaacs and Bright were assigned to a Stretchwrap Team. Bright filed her charge of discrimination early in 2003 and filed suit later that year.

Bright presented evidence that the men routinely vexed the women in an effort to make them quit. The tactics

included unwelcome sexual overtures and sex-related chatter, streams of misogynistic invective, refusal to train (team leaders tried to get women to view pornographic images on the men's computers, and, when women declined, the men would declare that they had no time for training), assigning women to the dirtiest jobs (which team leaders called "women's work"), and threats of violence, some of which were fulfilled (for example, Bright's dog was shot, supposedly as a warning to her). According to one of Bright's witnesses, on being told that men referred to female workers as "whores," "cunts," and "bitches," Vanderpool replied: "a hostile work environment is a productive work environment." As we remarked in *Isaacs*, 485 F.3d at 387: "A jury could infer that working conditions for female laborers at Hill's Pet Nutrition were materially worse than the conditions for male laborers, that managers of the firm knew this, and that they did nothing because the firm deemed the men's morale more important than the women's welfare."

Hill's Pet Nutrition contended that none of this testimony should be believed. It did, however, concede having a problem with pornography in the workplace, and it suspended 11 men for two weeks in March 2002 in response to their accumulation and viewing of inappropriate materials on the firm's computers. The employer maintains that this step solved the only problem that women had encountered at work.

Before trial, the district judge concluded that *Morgan* entitles Bright to present evidence of the working environment during her complete 2 years and 9 months of employment. 2005 U.S. Dist. LEXIS 15470 (S.D. Ind. July 26, 2005). In mid-trial, however, the judge changed his mind about the temporal limits. He instructed the jury that it could not consider anything that happened to Bright before March 29, 2002, approximately 300 days before she filed her charge, and could not consider at all

any of the incidents related to the pornographic images. So instructed, the jury returned a verdict against Bright. Her lawyer did not make a particularly articulate objection to the instruction, but he did remind the judge about *Morgan*, which under the circumstances (including the pretrial ruling following briefs on this very subject) was enough to preserve the issue for appellate review.

The district judge's instruction was mistaken, quite apart from our conclusion in *Isaacs* that a hostile working environment must be treated as one unlawful practice even if the employee moves from one team to another. For *Morgan* itself shows that a hostile environment in a single posting is one practice. Bright was part of a Stretchwrap Team for 22 months, from the beginning of 2001 until she quit in November 2002, but the judge allowed the jury to consider only the events of the final eight months, from April through November. As *Isaacs* holds, the judge should have allowed the jury to consider the working conditions that Bright encountered for her entire employment at the Richmond plant.

The district judge seems to have believed that the discipline of the 11 men in March 2002 marked a transition from a tolerant attitude at the plant to one where management had intervened on behalf of the women. Why this should cut off any possibility of damages for conditions that Bright encountered before March 29, 2002, is hard to see. Moreover, Bright contends that management's intervention in March 2002 had limited effect— that the men not only reloaded their computers with graphic sexual images but also blamed Bright and other women for their loss of pay and the embarrassment they had suffered when they had to explain to their wives why they were not going to work for those two weeks. Hill's Pet Nutrition denies these assertions, but, no matter who is right, the main point is that *Morgan* treats the totality of the working conditions as a single practice. It

is inappropriate to draw lines by time (that's *Morgan*'s core holding) or by the particular method that the men used to make working conditions worse for the women than for themselves. So it is not possible to rule out reliance on a particular kind of evidence (such as the pornographic pictures) or a particular time during which the hostile environment was manifest.

When an employer takes steps such as the suspensions and purge of objectionable material from the computers' hard drives, these acts matter not to the duration of the unlawful practice or the evidence a plaintiff may offer, but to the question whether the employer is responsible. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. Boca Raton*, 524 U.S. 775 (1998), hold that many unwelcome acts are not imputed to the employer, if it responds reasonably to discriminatory conditions. "[A]n employer can be liable . . . where its own negligence is a cause of the harassment. An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it. Negligence sets a minimum standard for employer liability under Title VII". 524 U.S. at 759. (Although the Court was writing here about supervisors' conduct that did not affect a "tangible employment action," we have used the same approach for the employer's response to co-workers' conduct. See, e.g., *Dunn v. Washington County Hospital*, 429 F.3d 689 (7th Cir. 2005); *Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663 (7th Cir. 2005).)

Hill's Pet Nutrition may be able to show that its handling of the sexual images solved part of the problem and prevents attribution. Similarly it may be able to show that it neither knew nor should have known about some of the events that Bright encountered. If an employee unreasonably fails to take advantage of preventive or corrective opportunities, and the employer consequently does not know about the problem, then it cannot be held liable. The

fact that an employer has raised these contentions, however, does not curtail the scope of the employee's proofs. See *Phelan v. Cook County*, 463 F.3d 773, 785 (7th Cir. 2006). Unless the evidence is so lopsided that the employer is entitled to judgment as a matter of law, both the plaintiff and the employer must be allowed to present their full evidentiary cases at trial, and the district judge should instruct on all of these issues. Instruction 3.04 of the *Federal Civil Jury Instructions of the Seventh Circuit* (2005) is a helpful model.

All of this is so straightforward that the reader must be wondering why we have bothered to recap it in a published opinion. The fact that the district judge balked, in mid-trial, at implementing the *Morgan* rule is one reason. That Hill's Pet Nutrition has stoutly defended the district court's decision, when it should have confessed error in light of *Isaacs* (released after this case was tried), is another.

According to the employer, *Isaacs* is irrelevant because the facts at the trial of Bright's suit differ from the facts in the summary-judgment record of Isaacs's claim. That the proof differs is true enough; that's inevitable even when two claims arise from the same workplace at roughly the same time. But what has this to do with rules of law? Counsel for Hill's Pet Nutrition appears to believe that rules of law shift from case to case, so that anyone who "ought" to win (as Hill's Pet Nutrition is sure that it should) must have the benefit of some favorable legal rule. That approach is nothing less than a challenge to the proposition that there are rules *of law* at all; it is a claim that every case should be tried "on its own facts" in a kind of law-free zone. We doubt that the employer would be so ready to jettison rules that favored its position; no more can it avoid legal rules that favor the plaintiff. Every case will have its own factual pattern, but the law does not change with the facts.

Hill's Pet Nutrition also insists that the jury must have found Bright and her witnesses not credible. If they were not telling the truth, then Bright loses under any legal rule. But how do we know whether the jury disbelieved Bright's evidence or instead concluded that what happened between March 29, 2002, and the end of Bright's employment in November 2002 was not severe or pervasive enough to support liability under Title VII? The verdict was general; the jury did not give a reason, and we cannot sustain the verdict on the basis of speculation that the jurors had one reason rather than the other. In denying a motion for sanctions, the district judge made it plain that *he* did not believe Bright, see 2006 U.S. Dist. LEXIS 71371 (S.D. Ind. Sept. 29, 2006), and perhaps this perspective influenced some of the judge's rulings. But a jury is entitled to make its own decision.

*Isaacs* had something for each side. The portion of *Isaacs* favoring the defendant is its conclusion that Colgate-Palmolive Co., the parent corporation of Hill's Pet Nutrition, is not the "employer" of the workers at the Richmond, Indiana, plant and so cannot be liable under Title VII. Just as Hill's Pet Nutrition has refused to accept the portion of *Isaacs* adverse to its interests, so Bright, represented by the same lawyer as Isaacs, has refused to accept the portion of *Isaacs* that favors Colgate-Palmolive. What one can say for this obduracy is that Bright (unlike Hill's Pet Nutrition) was not a party to *Isaacs* and so is not bound by rules of preclusion, though principles of *stare decisis* remain. But that is all one can say. This portion of *Isaacs* rested on the proposition that parent corporations are not liable for the wrongs of their subsidiaries unless they cause the wrongful conduct (and so are directly liable) or the conditions of investors' liability ("piercing the corporate veil") have been satisfied.

We could have cited oodles of decisions for that proposition but chose to cite only one: *United States v. Bestfoods*,

524 U.S. 51 (1998). The portion of Bright's brief dealing with the claim against Colgate-Palmolive ignores *Bestfoods*. What it says instead is that Colgate-Palmolive must have been Bright's employer—even though she was hired, paid, and supervised by the staff of Hill's Pet Nutrition—because Colgate-Palmolive promulgated policies that its subsidiaries were supposed to use to comply with Title VII. That a parent corporation has tried to prevent violations of law (the better to protect the value of its investment) hardly makes it directly responsible *for* those violations! (Bright does not contend that any of the policies that Colgate-Palmolive told its subsidiaries to use directly violated Title VII, counseled unlawful acts, or even increased the probability that unlawful acts would occur.) Nor does it matter that managers at Hill's Pet Nutrition told managers at Colgate-Palmolive about the problems at the Richmond plant. Title VII applies to *employers*, not to investors who know about what employers are doing. That Bright complained directly to personnel at Colgate-Palmolive does not make it an employer, any more than complaining to a Member of Congress would have made the Senator or Representative her employer. An email to Warren Buffett would not make him personally liable for wrongs committed by corporations in the Berkshire Hathaway portfolio.

The judgment in favor of Colgate-Palmolive is affirmed. The judgment in favor of Hill's Pet Nutrition is reversed, and the case is remanded for a new trial.

No. 06-3927 9

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*