NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 4, 2020[*]
Decided March 5, 2020

**Before**

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-2830

| | |
|---|---|
| BYRON RODERICK, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:17-cv-02201-TWP-MPB |
| BRC RUBBER AND PLASTICS, INC., | |
| *Defendant-Appellee*. | Tanya Walton Pratt, *Judge*. |

## O R D E R

Byron Roderick, who describes himself as an "openly gay male," quit his job at BRC Rubber and Plastics, Inc. He has now sued BRC, contending that a company manger subjected him to a hostile work environment because of his sexual orientation. The district court entered summary judgment for BRC. Because Roderick offered no evidence that his sexual orientation motivated the manager's actions or that those actions were severe or pervasive, we affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Roderick began working in BRC's quality-control department in 1996. (We view the record in favor of Roderick, the party opposing summary judgment. *See Swyear v. Fare Foods Corp.*, 911 F.3d 874, 877 (7th Cir. 2018).) Most workers knew that he is gay, and some heard rumors that he made pornographic films. One of these rumors surfaced in 2016. An employee complained that Roderick had sent to the employee's girlfriend a message about making a "sex video" for money. Roderick denied sending the message, adding that what he did outside of work hours was none of BRC's concern. David Laspas, manager of the quality-control department, told Roderick that he represented BRC at all times and that a dispute like this one could affect the workplace. Roderick promised to block the other employee and his girlfriend from his social-media account.

Over the next few months, Laspas repeatedly criticized Roderick. He often told Roderick that he needed to improve his performance; he reassigned a project from Roderick because he was dissatisfied with Roderick's pace; and he eventually put Roderick on a "performance improvement plan." No one had ever successfully completed one of these plans, Laspas advised Roderick, but he offered to help Roderick succeed nonetheless. A month later, Laspas determined that Roderick had failed to improve and demoted him (and other poor performers) to another department.

Roderick complained about his demotion. First, he wrote to BRC's owner, protesting that Laspas had "meticulously criticized" him "for every effort put forth" and caused him to suffer "increased anxiety due to the hostile environment." He added that he avoided Laspas because Laspas "threatened to walk employees out the door, myself included." Second, Roderick told a human-resources manager that Laspas was "harassing" him and that he was upset with Laspas's threats to fire workers. Roderick emphasized that Laspas treated all BRC's employees poorly.

Because of his long tenure and desire to improve, BRC offered Roderick the chance to return to his previous job and pay. Roderick declined the offer in order to avoid Laspas. Over the next six months, on the three occasions that Laspas saw Roderick, Laspas said Roderick's name out loud—conduct that Roderick considered intimidating. After six months, Roderick quit—he says because of Laspas's harassment.

Roderick sued BRC for discrimination based on sexual orientation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and BRC sought summary judgment. Roderick limited his suit to a claim of a hostile work environment. The district court ruled that no evidence suggested hostility based on sexual orientation.

On appeal, Roderick argues that a reasonable jury could find that Laspas harassed him. He maintains that Laspas became hostile toward him after they discussed the accusation that Roderick had solicited an employee's girlfriend for a sex video. After that encounter, Roderick argues, Laspas unfairly criticized his work, assigned him new tasks, and placed him on a performance improvement plan—all to force him to quit.

To overcome summary judgment, Roderick needed to produce evidence that the harassment he experienced was "based on" his membership in a protected class and "severe or pervasive." *Swyear*, 911 F.3d at 880. The Supreme Court is considering whether sexual orientation is a protected class under Title VII. *See Bostock v. Clayton Cnty.*, 139 S. Ct. 1599 (Mem) (2019). In *Hively v. Ivy Tech Cmty. Coll.*, 853 F.3d 339, 351–52 (7th Cir. 2017) (en banc), we held that it is, and neither party has requested that we stay this appeal pending a decision in *Bostock*. We need not wait, because, for two reasons, Roderick has not produced evidence of actionable harassment even under *Hively*.

First, nothing suggests that Laspas treated Roderick poorly because of his sexual orientation. To the contrary, Roderick admitted to a human-resources manager that Laspas treated *everyone* poorly. This admission dooms his claim because a hostile work environment is unlawful under Title VII only when the plaintiff is singled out based on a protected characteristic. *See Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002); *see also Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 666–67 (7th Cir. 2005) (no discrimination where harasser "picked on anyone … he could get away with tormenting"). No "singling out" occurred here.

Second, Laspas's conduct was not so severe or frequent that it "alter[ed] the conditions of employment and create[d a] hostile or abusive working environment." *Swyear*, 911 F.3d at 881. (The district court stated that a workplace must be "hellish," but that is no longer the standard. *Id.* at 880.) Laspas never threatened Roderick with physical contact, and his verbal comments were limited to criticisms of Roderick's work. Even those criticisms were modulated: Laspas offered to help Roderick improve, and BRC, in recognition of Roderick's tenure and positive attitude, offered to restore Roderick to his prior job and pay. Although Laspas's management style nonetheless offended Roderick, "Title VII 'does not guarantee a utopian workplace, or even a pleasant one.'" *Patton*, 276 F.3d at 339 (quoting *Vore v. Ind. Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994)). Laspas's criticisms may have led Roderick to quit his job of more than 20 years, but they did not violate Title VII.

AFFIRMED